**In re Richard J. CARROLL, dba R.J. Carroll Co., fdba R.J. Carroll & Associates, Debtor.**

**Richard J. CARROLL, and Budget Motels of America, Inc., Plaintiffs–Appellants,**

**v.**

**TRI–GROWTH CENTRE CITY, LTD., a California limited partnership, Dallas G. Wilborn and R.W. Unander, Defendants–Appellees.**

No. 89–55088.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 1990.

Decided May 23, 1990.

---

**1268**

Margaret M. Mann, Luce, Forward, Hamilton & Scripps, and Nathan E. Jones, San Diego, Cal., for plaintiffs-appellants.

Everett G. Barry, Jr., Melissa A. Blackburn, Mulvaney & Kahan, San Diego, Cal., for defendants-appellees.

Before BROWNING, NOONAN, and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Richard J. Carroll, dba R.J. Carroll Co., fdba R.J. Carroll & Associates ("Carroll"), a debtor in Chapter 11 proceedings, appeals from the Bankruptcy Appellate Panel's ("BAP") affirmance of the bankruptcy court's order denying Carroll's request for a temporary restraining order enjoining the termination of a management agreement between Carroll and Tri–Growth Centre City, Ltd. ("Tri–Growth"). We reverse.

## BACKGROUND FACTS

On June 26, 1984, Dallas G. Wilborn, R.W. Unander, and Richard J. Carroll formed Tri–Growth for the purpose of constructing a motel complex ("Downtown Budget Motel") in San Diego, California. Carroll served as the managing general partner for Tri–Growth and received the entire 15% profit interest available to general partners. R.J. Carroll Co.[1] was retained as the manager of daily operations at the Motel.

On May 7, 1986, Carroll filed a Chapter 11 reorganization petition. Carroll retained control of the assets of the estate as a debtor-in-possession.

As a result of Carroll's bankruptcy filing, though, the bank which had offered permanent financing for the Downtown Budget Motel project revoked its financing arrangement with Tri–Growth. Carroll and the other general partners made several unsuccessful attempts on behalf of Tri–Growth to find replacement financing. Tri–Growth was finally able to obtain a loan through another bank. However, a condition of that loan was that Carroll step down as the managing general partner and take only a limited partnership interest in Tri–Growth. Thus, Carroll and Tri–Growth agreed that Carroll would resign as the managing general partner, that Carroll's partnership interest would be recharacterized as a limited partnership interest, and that Carroll and Budget Motels of America, Inc. ("Budget Motels")[2] would enter into a management agreement with Tri–Growth to manage the Downtown Budget Motel. Carroll then petitioned the bankruptcy court for authorization to enter into the management agreement and to recharacterize his ownership interest in Tri–Growth.

On November 30, 1986, the bankruptcy court, after a hearing, authorized Carroll to enter into the agreements outlined above. On December 1, 1986, Carroll, Budget Motels and Tri–Growth entered into a manage-

---

1. R.J. Carroll Co. is an affiliate of R.J. Carroll.

2. Carroll is the president and sole shareholder of Budget Motels. The entire profit realized from the management agreement with Tri–

Growth goes directly into the estate. Also, Budget Motels' operating expenses are paid by the estate. However, Budget Motels is not a debtor.

ment agreement. Under the terms of the agreement, Carroll was to manage the Downtown Budget Motel in return for 8% of the motel's gross receipts. Also, paragraph 7.01 of the management agreement provided that either party could terminate the agreement for cause upon 90 days written notice.

On August 13, 1987, Tri–Growth notified Carroll that it intended to terminate the agreement in 90 days.[3] The termination was to become effective November 13, 1987. Tri–Growth never petitioned the bankruptcy court for relief from the stay so that it could terminate the agreement.

On November 6, 1987, five days before the effective date of the termination, Carroll sought a temporary restraining order ("TRO") and preliminary injunction to prevent the termination of its management agreement with Tri–Growth. Carroll asserted that the termination of the agreement was a violation of the automatic stay and that Carroll was entitled to injunctive relief.

On November 17, 1987, the bankruptcy court denied the TRO request without a hearing, finding that Carroll had failed to present evidence that he would be irreparably harmed if an injunction did not issue. Carroll subsequently appealed the bankruptcy court's order by a notice of appeal filed November 27, 1987. Tri–Growth challenged the BAP's jurisdiction to hear the appeal since Carroll had not filed a motion for leave to appeal. On December 16, 1988, the BAP found that the Panel had jurisdiction to hear the case, but affirmed the bankruptcy court's denial of Carroll's request for a TRO. Carroll filed a timely appeal to this court.

## STANDARD OF REVIEW AND JURISDICTION

The BAP's jurisdiction is contested. We have jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291.

■ The court of appeals applies the same standard as the BAP in reviewing the bankruptcy court's decision. *In re Herbert,* 806 F.2d 889, 891 (9th Cir.1986). The bankruptcy court's findings of fact are reviewed for clear error, and the court's conclusions of law are reviewed de novo. *Wien Air Alaska, Inc. v. Bachner,* 865 F.2d 1106, 1108 (9th Cir.1989).

## DISCUSSION

### A. BAP Jurisdiction

■ Tri–Growth contends that the BAP did not have jurisdiction to review the bankruptcy court's denial of the TRO. We disagree.

It is true that ordinarily appellate courts do not have jurisdiction to review the denial of a TRO. *Miller v. Lehman,* 736 F.2d 1268, 1269 (9th Cir.1984). However, we have recognized an exception to this rule in cases where " 'denial of *all* relief was implied in the trial judge's denial of a temporary restraining order.' " *Id., quoting, Kimball v. Commandant Twelfth Naval Dist.,* 423 F.2d 88, 90 (9th Cir.1970). *See also* 11 C. Wright & A. Miller, Federal Practice and Procedure, Civil § 2962 at 619 (1973) ("label attached to an order by the trial court is not decisive with regard to whether" the court's order is reviewable).

In this case, the bankruptcy court denied the TRO in strong language which even suggested that no stay existed. It left no doubt that it was completely resolving the issue of whether Tri–Growth was precluded from terminating the management agreement. Therefore, we find that the BAP had jurisdiction to review the bankruptcy court's order.

### B. Appeal Is Not Moot

■ Tri–Growth contends that this appeal should be dismissed as moot since the agreement terminated by its own terms on November 13, 1987, because Carroll failed to seek a stay pending appeal. We acknowledge that "an appeal will be dis-

---

**3.** Tri–Growth indicated that the reasons for the termination of the agreement were that Carroll and Budget Motels had failed to maintain ade-

quate books and records and to accurately record income and expenses.

missed as moot when events occur which prevent the appellate court from granting any effective relief, even if the dispute is decided in favor of the appellant." *In re Combined Metals Reduction Co.*, 557 F.2d 179, 187 (9th Cir.1977). However, Carroll did not limit his suit to injunctive relief, but also sought money damages for Tri–Growth's violation of the stay. Moreover, the assertion of mootness begs the question before us. This is not a case where a foreclosure or sale has gone forward because the stay was lifted. We have nothing before us to suggest that the management agreement has been properly terminated, or for that matter, terminated at all. Carroll is, at least, still entitled to any damages that he can establish as a result of Tri–Growth's violation of the stay. We therefore find that the issue is not moot.

C. Termination of Agreement was Violation of Stay

The BAP found "that the automatic stay [did] not apply to stay the termination of the management agreement because application of the stay would be in conflict with the bankruptcy court order approving the management agreement which provided for termination upon ninety days notice." The BAP did not reach the question of whether the management agreement was property of the estate since the court indicated that regardless of how the management agreement was categorized, Tri–Growth had an unconditional right to terminate the agreement. These determinations were erroneous.

1. *"Property of the Estate"*

■  The automatic stay enjoins the enforcement of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Property of the estate includes "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). Commentaries indicate that "[a]n example of the application of section 541(a)(7) would be if the trustee entered into a contract after commencement of the case. The estate's interest in such a contract would, pursuant to section 541(a)(7), be property of the estate." 4 Collier on Bankruptcy ¶ 541.20, 541–105 (15th ed. 1990). *See also* 2 W. Norton, Bankruptcy Law and Practice § 29.13 (1986).

Carroll argues that the management agreement was property of the estate because it provided the estate with 8% of the profits from the Downtown Budget Motel in exchange for Carroll's and Budget Motel's management of the Motel. We find Carroll's argument persuasive.[4]

The management agreement flows out of and was given in consideration for the estate's 15% interest in the general partnership of Tri–Growth. At the time of the filing of Carroll's reorganization petition, the estate had a management agreement with and a 15% general partnership interest in Tri–Growth, and had loaned the partnership $125,000. Thus, the estate had a substantial interest in Tri–Growth. When Carroll declared bankruptcy and Tri–Growth subsequently lost its financing for the project, the estate stood to lose a significant amount of money. The only financing that could be procured was conditioned on the recharacterization of Carroll's 15% managing general partnership interest. Carroll agreed to exchange his general partnership interest in consideration of a limited partnership interest and a management agreement that guaranteed him 8% of the motel's gross receipts. The management agreement was part and parcel of the agreement to recharacterize Carroll's interest and was therefore property of the estate.[5]

Since we find the agreement to be property of the estate, it was protected by the

4. There is no evidence before us to suggest that this management agreement implicates the personal earnings exception in § 541(a)(6). *See In re Fitzsimmons,* 725 F.2d 1208 (9th Cir.1984).

5. The fact that the parties sought and the bankruptcy court gave its authorization for the parties' entrance into the agreement also suggests that the agreement is property of the estate. Of course, this is certainly not dispositive of the question.

automatic stay, and Tri–Growth was required to seek relief from the stay before terminating the agreement.

### 2. Effect of Paragraph 7.01

■ Tri–Growth contends that even if the agreement is considered property of the estate, the estate's rights under the agreement are only as great as the rights conferred by the agreement.

It is well settled that "[t]he Bankruptcy Code neither enlarges the rights of a debtor under a contract, nor prevents the termination of a contract by its own terms." *In re Advent Corp.*, 24 B.R. 612, 614 (Bankr. 1st Cir.1982). Tri–Growth contends that under the agreement, both parties enjoy an unqualified right to terminate upon 90 days notice. Tri–Growth relies upon a series of insurance contract cases in which the creditor had an unqualified right to terminate the agreement. *See In re Heaven Sent, Ltd.*, 50 B.R. 636, 638 (Bankr.E.D.Pa.1985); *In re Bogey's Barn, Ltd.*, 47 B.R. 555, 556 (Bankr.S.D.Fla.1985); *In re Douglas*, 18 B.R. 813, 814 (Bankr.W.D.Tenn.1982).

We find the relevant provisions of the contracts in those cases distinguishable from the agreement in the present case. Those cases involved insurance contracts with clauses that enabled the insurance companies to terminate the agreement at any time for any reason upon a fixed number of days notice. In this case, the agreement provides "that the owner may terminate the agreement *for cause* including the event that Manager shall be in material breach of this Agreement upon 90 days written notice to Manager." (emphasis added). The "for cause" language creates a conditional right quite different from the unconditional language in the insurance contract cases.

■ Indeed, the contract in this case is analogous to an executory contract that is protected, even in breach, by the automatic stay. An executory contract that is property of the estate can only be terminated after a grant of relief from the stay. *See In re Computer Communications, Inc.*, 824 F.2d 725, 729–30 (9th Cir.1987) (a contract of the estate may not be unilaterally terminated by creditor, even if estate's interest is limited, without petitioning the bankruptcy court for relief from the automatic stay). Tri–Growth never formally petitioned the bankruptcy court for relief from the stay in order to pursue its rights under the termination provision.

### 3. Court's Approval of the Management Agreement

■ Tri–Growth contends that even if the management agreement was protected by the automatic stay, the bankruptcy court in effect granted Tri–Growth prospective relief from the stay when it authorized Carroll to enter into the agreement containing the termination clause.

Carroll claims that the bankruptcy court was prohibited from pre-approving Tri–Growth's termination of the agreement since that termination would have frustrated the protection of the automatic stay. He contends that such approval deprives the debtor of notice and an opportunity to be heard. He is wrong. A party is still given notice and an opportunity to be heard in the prospective relief setting. The notice and hearing just occur prior, rather than subsequent, to the imposition of the stay. *See In re Clark*, 71 B.R. 747, 750 (Bankr.E.D.Pa.1987); *Norton v. Hoxie State Bank*, 61 B.R. 258, 261 (Bankr.D. Kan.1986).

However, in order for us to treat the bankruptcy court's approval of the agreement as a grant of prospective relief, the bankruptcy court must have been presented with the termination clause. It could hardly approve advance termination of the stay if it did not even know that termination was in question. The bankruptcy court never reviewed the termination clause.

The Order authorizing the execution of the management agreement provides that "the Debtor in Possession is hereby authorized to enter into a Motel Management Agreement on the general terms and conditions as set forth in the Motion." The terms listed in Carroll's motion are that "the parties will be executing a formal

management agreement providing for a fee equal to 8% of the gross receipts of the Downtown Budget Motel." Neither document mentions the termination provision contained in paragraph 7.01 of the management agreement, nor does Tri–Growth ever directly assert that the bankruptcy court reviewed the particular terms of the agreement prior to or at the hearing. While we acknowledge that Tri–Growth has a "relatively slight burden to overcome to obtain relief from the automatic stay prospectively," *see Clark*, 71 B.R. at 750, we find that it has failed to meet that burden. There was simply no evidence to indicate that the bankruptcy court ever reviewed—or even could have reviewed—the terms of the agreement. The bankruptcy court's failure to approve the specific termination clause renders its authorization insufficient to constitute an order for prospective relief from the stay.

### 4. Court's Denial of Temporary Restraining Order

■ Tri–Growth contends that even if we find that the court did not grant prospective relief from the stay when it authorized Carroll to enter into the agreement, the court terminated the stay when it denied Carroll's motion for a temporary restraining order.

Section 362(d) requires that the debtor receive notice and an opportunity to be heard before the bankruptcy court may terminate the stay. The bankruptcy court held no hearing on Carroll's request for a temporary restraining order. Moreover, there is no evidence in the record that the question of termination of the stay was ever before the court. The parties in their papers debated whether there *was* a stay in existence that prevented Tri–Growth from terminating the agreement. The court, in refusing to award relief, found that Tri–Growth was "not stayed ... from terminating the Management Agreement." We interpret the court's holding to be a finding

that the agreement was not covered by the stay. Since the court found that the agreement was not protected by the stay in the first instance, it did not reach the question of whether Tri–Growth was entitled to relief from the stay so that it could terminate its agreement with Carroll.

This is not merely a procedural nicety. There is a vast difference between saying, " 'x' does not exist so I need not consider it," and saying, " 'x' does exist but I have decided to put an end to it." We therefore hold that Carroll was not accorded notice or an opportunity to be heard on the question of termination of the stay.

### D. Damages

■ Section 362(h) provides for the recovery of damages for the willful violation of the automatic stay. *In re Zartun*, 30 B.R. 543, 546 (Bankr. 9th Cir.1983). "Willful" refers to the creditor's knowledge of the automatic stay. *In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989). *See also In re Sansone*, 99 B.R. 981, 985 (Bankr.C.D.Cal. 1989). In this case, it is clear that Tri–Growth acted with knowledge of the bankruptcy filing. However, the extent of Carroll's actual damages, if any, is unclear from the facts before us. Therefore, we remand the case to the BAP with instructions to remand to the bankruptcy court for further proceedings not inconsistent with this opinion.[6]

### E. Sanctions Not Warranted

■ Tri–Growth contends that this is a frivolous appeal and that it is therefore entitled to attorneys fees and costs. Since we are persuaded that the BAP erred in affirming the bankruptcy court's decision, sanctions are obviously inappropriate.

### CONCLUSION

We hold that Carroll's management agreement is property of the estate. As property of the estate, the agreement was

---

**6.** In so doing, we do not mean to preclude the court from considering whether in light of all the facts in this case, it is proper to make an order terminating the stay retroactively. *See Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178–

80 (5th Cir.1989); *Algeran, Inc. v. Advance Ross Corp.*, 759 F.2d 1421, 1425 (9th Cir.1985); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674–76 (11th Cir.1984). *See also* 1 Collier's Bankruptcy Manual ¶ 362.06 at 362–46 to 362–47.

protected by the automatic stay to the extent of the rights provided for in the agreement. The "for cause" language in paragraph 7.01 only gives Tri–Growth a conditional right to terminate. Thus, Tri–Growth should have sought relief from the stay before attempting to terminate the agreement. We are not persuaded that it sought relief either at the authorization hearing or in its papers opposing the temporary restraining order. Its failure to seek relief was a violation of the stay and renders its attempt to terminate the agreement ineffective. We remand this case to the BAP with instructions to remand it to the bankruptcy court for further proceedings not inconsistent with our decision.

REVERSED and REMANDED.

NOONAN, Circuit Judge, concurring:

This case arose because Carroll moved for a temporary restraining order to prevent termination of the management contract. Carroll explicitly invoked 11 U.S.C. § 362(a), the automatic stay provision. Carroll's motion was denied in an order by the bankruptcy court declaring: "the Defendants are not stayed or enjoined from terminating the Management Agreement." The bankruptcy court was fully aware of the automatic stay, which Carroll had invoked, and the court's language appears to be deliberately chosen as a way of stating that the automatic stay was lifted and was not a barrier to termination. Of course, Carroll was entitled to notice if the automatic stay was to be lifted. But when his own motion explicitly depended on the automatic stay no further notice was necessary to him. The court apparently did not hold the hearing that section 362(d) requires. It will be no surprise if, on remand of this case, the court does hold the hearing and retroactively reinstates relief from the automatic stay.