REINHARDT, Circuit Judge:
In this case we review a district court’s entry of summary judgment in an antitrust suit on the basis of the plaintiffs’ lack of standing. Because we conclude that appellant Hillis Motors, Inc., has standing to bring this action, we reverse.
1. BACKGROUND
In June 1984 Hillis Motors, Inc., an automobile dealership, voluntarily filed a petition for relief under Chapter 11 of the Bankruptcy Code. Because of misconduct by Hillis’ previous management, a trustee was appointed to conduct the corporation’s affairs. One year later an Amended Plan of Reorganization, which had been proposed by the trustee, was confirmed by the bankruptcy court. In September 1986, the Hawaii Department of Commerce and Consumer Affairs [“DCCA”] mailed to Hillis’ last known address a notice of its intention to dissolve the corporation for failing for two years to file annual exhibits and accompanying filing fees as required by Hawaii law. Haw.Rev.Stat. § 416-122 (1985).[1] After receiving no response from Hillis and after complying with the required statutory procedures, the DCCA officially dissolved Hillis on November 7, 1986. Hillis did not respond to the DCCA’s action until July 1987. At that time Hillis argued both that the notice provided to it was inadequate and that its dissolution was in violation of the Bankruptcy Code’s automatic stay provision. While the DCCA maintained that it had complied with the statutory notice requirements, it adopted Hillis’ view that the automatic stay applied and granted Hillis leave to apply for reinstatement. Hillis took no action.
Nearly three and a half years later Hillis and Dallas Rowley, chief executive officer of the corporation, brought the present antitrust action alleging that the conduct of the defendants had caused Hillis’ first attempt at reorganization to fail.[2] In January 1991 Hil-lis finally applied to the DCCA for reinstatement. The DCCA granted Hillis’ application, setting aside its earlier dissolution order *584 and retroactively reinstating the corporation as of November 7, 1986. One day prior to the DCCA’s reinstatement order, the defendants filed motions to dismiss Hillis’ antitrust suit on the ground that Hillis lacked standing because it had been dissolved and was “legally dead”.[3] The district court treated these filings as motions for summary judgment and granted them on August 12, 1991. The district court held 1) that the DCCA had properly dissolved Hillis; 2) that the automatic stay was inapplicable to the DCCA’s action; and, 3) that the DCCA’s reinstatement of Hillis had no effect because Haw.Rev.Stat. section 416-127 required an involuntarily dissolved corporation to apply for reinstatement within ninety days of its dissolution. Accordingly, the district court determined that Hillis lacked the capacity to sue and entered summary judgment against the company.[4] Hillis filed a timely appeal of the district court’s judgment. We have jurisdiction under 28 U.S.C. § 1291.[5]
II. DISCUSSION
A. Overview
We review a grant of summary judgment de novo. E.g., S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1083 (9th Cir.1989). We must determine whether there are any genuine issues of material fact and whether the district court properly applied the relevant substantive law. Id. We view the evidence in the light most favorable to the nonmoving party. Id. We may affirm the district court’s judgment based upon any ground supported by the record even if the district court relied on the wrong ground or employed incorrect legal reasoning. Jackson v. Southern Cal. Gas Co., 881 F.2d 638, 643 (9th Cir.1989).
Where, as here, the historical facts are undisputed, questions of standing are properly resolved on summary judgment. See Lujan v. Defenders of Wildlife, - U.S. -, -, 112 S.Ct. 2130, 2136-37, 119 L.Ed.2d 351 (1992) (standing may be resolved on the pleadings, on summary judgment, or at trial). Federal Rule of Civil Procedure 17(b) provides that “[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized.” We have previously held that Fed.R.Civ.P. 17(b) requires that we determine standing for federal antitrust actions pursuant to the pertinent provisions of state law. Community Elec. Serv. v. Nat’l Elec. Contractors Ass’n, 869 F.2d 1235, 1239 (9th Cir.), cert. denied, 493 U.S. 891, 110 S.Ct. 236, 107 L.Ed.2d 187 (1989). In Community Electric, we decided that a corporation that, under applicable state law, had been dissolved prior to the time it filed an antitrust action had no capacity to sue. Similarly, the question here is whether at the time it filed the instant antitrust action Hillis had the capacity to sue under Hawaii law. The district court’s determination that Hillis lacked standing is reviewed de novo. United Union of Roofers, Waterproofers, and Allied Trades No. 40 v. Insurance Corp. of Am., 919 F.2d 1398, 1399 (9th Cir.1990).
*585 In this appeal, we must decide whether federal bankruptcy law prohibited the DCCA from involuntarily dissolving Hillis pursuant to state law in 1986. Hillis’ principal argument is that the DCCA’s dissolution action was of no effect because it violated the Bankruptcy Code’s automatic stay provision. Appellees maintain that Hillis’ dissolution did not violate any provision of the Bankruptcy Code and that federal law affirmatively permits state regulatory actions such as the DCCA’s. Resolution of the issues presented requires an exploration of the purposes and mechanics of the Chapter 11 reorganization process and the effect of an involuntary corporate dissolution under Hawaii law. It also necessitates consideration of the careful balance between federal and state interests that bankruptcy law constructs. Because interpretations of the bankruptcy statutes involve questions of law, we review them de novo. See, e.g., Home Sav. Bank, F.S.B v. Gillam, 962 F.2d 1162, 1166 (9th Cir.1991). To the extent that state law must be interpreted, we also use the de novo standard of review. Salve Regina College v. Russell, 499 U.S. 225, -, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); Brooks v. Hilton Casinos, Inc., 959 F.2d 757, 759 (9th Cir.), cert. denied,U.S. -, 113 S.Ct. 300, 121 L.Ed.2d 224 (1992).
B. The Automatic Stay and State Regulatory Authority
1. The DCCA’s Dissolution Action Exercised Control Over Property of the Estate.
a. Statutory Framework
The commencement of a case in bankruptcy creates an “estate”, which contains all of the debtor’s interests (whether legal or equitable) in property, tangible or intangible. 11 U.S.C. § 541(a); United States v. Whiting Pools, Inc., 462 U.S. 198, 203-05, 103 S.Ct. 2309, 2312-14, 76 L.Ed.2d 515 (1983). All corporate property passes to the estate. Commodity Futures Trading Comm’n v. Weintraub, 471 U.S. 343, 352-53, 105 S.Ct. 1986, 1992-93, 85 L.Ed.2d 372 (1985). The estate is represented by a trustee who acts as a fiduciary for the debtor’s creditors and shareholders. 11 U.S.C. § 323(a); Weintraub, 471 U.S. at 355, 105 S.Ct. at 1994. Where a trustee is appointed,[6] he may assume control and operation of the debtor’s business. 11 U.S.C. § 1108. In such circumstances the debtor corporation’s directors are completely ousted and retain virtually no management powers. Weintraub, 471 U.S. at 353, 105 S.Ct. at 1993. Indeed, the Bankruptcy Code specifically provides that the role of the debtor is to cooperate with the trustee as necessary to enable the trustee to perform his duties. 11 U.S.C. § 521(3).
When a debtor files a bankruptcy petition, an automatic stay immediately arises. 11 U.S.C. § 362(a). The scope of the stay is quite broad. Stringer v. Huet (In re Stringer), 847 F.2d 549, 551 (9th Cir.1988). It is designed to effect an immediate freeze . of the status quo by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate. Interstate Commerce Comm’n v. Holmes Transp., Inc., 931 F.2d 984, 987 (1st Cir.1991), vacated 983 F.2d 1122 (1st Cir.1993). The automatic stay plays a vital and fundamental role in bankruptcy. Midlantic Nat’l Bank v. New Jersey Dept. of Envtl. Protection, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986); Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571 (9th Cir.1992). The stay ensures that all claims against the debtor will be brought in a single forum, the bankruptcy court. Pettibone Corp. v. Easley, 935 F.2d 120, 123 (7th Cir.1991). The stay protects the debtor by allowing it breathing space and also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others. Treasurer of Snohomish Cty., Wash. v. Seattle First Nat’l Bank (In re Glasply Marine Indus.), 971 F.2d 391, 394-95 (9th *586 Cir.1992); Stringer, 847 F.2d at 551. In this circuit, actions taken in violation of the automatic stay are void rather than voidable. Schwartz, 954 F.2d at 571; Stringer, 847 F.2d at 551.
While the automatic stay specifically enjoins eight acts, only one subsection of that provision is at issue here: 11 U.S.C. § 362(a)(3).[7] It provides:
(a) Except as provided in subsection (b) of this section, a [filed] petition ... operates as a stay, applicable to all entities, of&emdash;
(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; (emphasis added)
A principal purpose of this provision is to preserve property for use in the reorganization of the debtor and to prevent the dismemberment of the estate. Continental Air Lines, Inc. v. Hillblom (In re Continental Air Lines, Inc.), 61 B.R. 758, 779 n. 41 (S.D.Tex.1986) (quoting legislative history); The Official Committee of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines), 114 B.R. 27, 29 (Bankr.S.D.N.Y.), aff'd, 119 B.R. 430 (S.D.N.Y.1990). Where through an action an individual or entity would exercise control over property of the estate, that party must obtain advance relief from the automatic stay from the bankruptcy court. Carroll v. Tri-Growth Centre City, Ltd. (In re Carroll), 903 F.2d 1266, 1270-71 (9th Cir.1990). This rule applies with equal force to acts by governmental agencies. See Glasply, 971 F.2d at 394 (county government); California v. Farmers Markets, Inc. (In re Farmers Markets, Inc.), 792 F.2d 1400, 1404 (9th Cir.1986) (state board of equalization).
b. Hillis’ Corporate Property and Hillis’ Plan
It is undisputed that the DCCA did not obtain permission from the bankruptcy court to dissolve Hillis. However, the district court dismissed Hillis’ argument that the DCCA’s dissolution of Hillis violated 11 U.S.C. section 362(a)(3) because the judge concluded that the dissolution proceeding did not involve property of the estate. While the district court did not explain how it reached this conclusion, we must decide whether the district court was nonetheless correct. Hillis contends that the DCCA’s dissolution order violated 11 U.S.C. section 362(a)(3) because Hillis’ corporate charter was property of the estate. Appellees dispute this analysis and argue that a corporate charter is “status” rather than “property”. While the question of whether a corporate charter is “property” is a conceptually interesting one, we need not resolve it to decide this case. Whether the DCCA’s dissolution of Hillis was an act “to exercise control over property of the estate” in violation of subsection (a)(3) of the automatic stay provision does not depend upon whether Hillis’ corporate charter was itself property of the estate.
There is no question that the DCCA exercised control over Hillis’ corporate property by involuntarily dissolving Hillis.[8] When a corporation is involuntarily dissolved by the DCCA, that action serves to vest legal and equitable title to all corporate property in the stockholders. Haw.Rev.Stat. § 416-124; American Sec. Bank v. Bank of Honolulu, 646 F.Supp. 1063, 1066 (D.Haw.1986); In re Ellis, 53 Haw. 23, 487 P.2d 286, 289 (1971), cert. denied, 405 U.S. 1075, 92 S.Ct. 1500, 31 L.Ed.2d 809 (1972). Thus, the effect of Hillis’ dissolution was to transfer all of its property to its sole shareholder, D. Hillis. Since *587 all corporate property passes to the estate when a bankruptcy petition is filed, Weintraub, 471 U.S. at 352, 105 S.Ct. at 1992, there is also no doubt that by its dissolution action the DCCA exercised control over property that belonged to the estate just following the commencement of Hillis’ bankruptcy case.
However, the salient question is whether the property affected by the DCCA’s dissolution of Hillis was still property of the estate at the time of the dissolution action. The stay of an action against property of the estate is automatically lifted when the property involved is no longer part of the estate. 11 U.S.C. § 362(c)(1). “Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.” 11 U.S.C. § 1141(b). Thus, confirmation of a reorganization plan ordinarily lifts the automatic stay against acts that would result in the exercise of control over property of the estate, because confirmation usually terminates the existence of the estate.
Although it is normally the case that once a plan is confirmed the estate ceases to exist, it is not always so.[9] See United States v. Unger, 949 F.2d 231, 233 (8th Cir.1991). The reversion of property from the estate to the debtor upon confirmation contained in 11 U.S.C. § 1141(b) is explicitly subject to the provisions of the plan. Martin-Trigona v. Belford (In re Martin Trigona), 781 F.2d 36, 39 (2d Cir.1986) (plan expressly provided for the sale of the debtor’s assets to third party); accord Sanders v. City of Brady (In re Brady, Texas, Municipal Gas Corp.), 936 F.2d 212, 218 (5th Cir.) (plan provided for transfer of debtor’s assets to the city), cert. denied, - U.S. -, 112 S.Ct. 657, 116 L.Ed.2d 748 (1991); Cunningham v. Healthco, Inc., 824 F.2d 1448, 1460 (5th Cir.1987) (plan provided that debtor’s cash recoveries from litigation were to remain under the supervision of the bankruptcy court and were property of the estate).
Hillis argues that under its plan of reorganization the property of the estate did not revest in the corporation at the time of confirmation but remained in the estate for some period. Accordingly, Hillis contends, the automatic stay continued post-confirmation in this case. Hillis claims that the bankruptcy court and the trustee retained control over its reorganization following plan confirmation, at least until after the date of the order of dissolution. Specifically, Hillis points to the following provisions in its confirmed plan as evidence of the continuation of the estate and the automatic stay:[10]
1. The management, operation, and control of Hillis’ business remained in the hands of the trustee who was “the representative of the Court in the operation of the reorganized Debtor’s business.”
2. Hillis’ C.E.O., Dallas Rowley, was required to provide the trustee with all financial transactions on a monthly basis.
3. Assets of the estate were protected from any repayment claims by Rowley for his post-confirmation capital investments in Hillis.
4. A fixed percentage of Hillis’ post-confirmation net profits were to be paid to the estate for disbursement as ordered by the bankruptcy court.
5. The bankruptcy court retained jurisdiction to insure that the purpose and intent of the plan were carried out.[11]
*588 A reorganization plan resembles a consent decree and therefore, should be construed basically as a contract. See The Official Creditors Committee of Stratford of Texas, Inc. v. Stratford of Texas, Inc. (In re Stratford of Texas, Inc.), 635 F.2d 365, 368-69 (5th Cir. Unit A Jan. 1981); see also Rufo v. Inmates of Suffolk County Jail, — U.S. -, -, 112 S.Ct. 748, 757, 116 L.Ed.2d 867 (1992) (a consent decree has elements of both a judgment and a contract). Although a confirmed bankruptcy plan is a judgment rendered by a federal court in a case arising under federal law, because there is little need for a nationally uniform body of law regarding the interpretation of Chapter 11 plans and because state law is regularly incorporated into bankruptcy law, state law constitutes the federal rule of decision here and governs our interpretation of Hillis’ plan. See Kamen v. Kemper Financial Serv. Inc., — U.S. -, -, 111 S.Ct. 1711, 1717, 114 L.Ed.2d 152 (1991); United States v. Kimbell Foods, Inc., 440 U.S. 715, 727-29, 99 S.Ct. 1448, 1458-59, 59 L.Ed.2d 711 (1979); Stratford, 635 F.2d at 368-39.
Under Hawaii law a legal agreement should be construed as a whole and its meaning determined from the entire context and not from any one part, word, phrase, or clause. Maui Land & Pineapple Co. v. Dillingham, 67 Haw. 4, 674 P.2d 390, 395 (1984). The construction of legal documents is a question of law, but where such a document is ambiguous resort can be had to extrinsic evidence, such as the record in the case in which the ambiguous order was entered, to aid in construction. Fujii v. Osborne, 67 Haw. 322, 687 P.2d 1333, 1339 (1984). When parol evidence is employed to explain the intent of the parties who drafted the document, intent becomes a question of fact. DiTullio v. The Haw. Ins. & Guar. Co. Ltd., 1 Haw.App. 149, 616 P.2d 221, 226 (1980). However, where extrinsic evidence demonstrates that one interpretation of a document is obviously correct and that any other construction would be clearly erroneous, a remand for the evaluation of the extrinsic evidence by the trier of fact is not required. See Stratford, 635 F.2d at 369-70.
Hillis’ first confirmed plan is not a model of draftsmanship. However, it unambiguously provides for the continuation of the estate post-confirmation. It mandates the payment of a percentage of Hillis’ post-confirmation profits into the estate for later distribution. It also protects the estate from post-confirmation claims by Rowley. Our conclusion that the estate continued after confirmation of Hillis’ plan is confirmed by a later decision of the bankruptcy court in this case. In re Hillis Motors, Inc., 120 B.R. 556 (Bankr.D.Haw.1990). There, the bankruptcy judge treated the interest on the claims of persons who had bought automobiles from Hillis after confirmation of the reorganization plan—cars that Hillis was not delivering (and/or for which Hillis was not delivering vehicle title) [12]—as actual and necessary expenses of preserving the estate under 11 U.S.C. § 503(b)(1)(A).[13] Id. at 558-59. While the allowance of post-confirmation administrative expenses under that section is unusual, cf. United States v. Redmond, 36 B.R. 932 (D.Kan.1984); In re Barker Medical Company, Inc., 55 B.R. 435 (Bankr.M.D.Ala.1985), such an allowance would seem to be permissible where the estate continues after confirmation. See French Market Homestead, FSA v. P.C. Ltd. (In re P.C. Ltd.), 929 F.2d 203, 204 n. 1 (5th Cir.1991) (assuming without explicitly deciding that in certain circumstances § 503(b)(1)(A) can apply post-confirmation). Since the bankruptcy court allowed *589 the payment of administrative expenses necessary to preserve the estate post-confirmation, it follows that, in its view, there was a post-confirmation estate to preserve.
The more difficult question is whether, after confirmation, Hillis’ corporate property remained property of the estate as to which the automatic stay applied. The plan does not state in unambiguous terms that the property of the estate does not revest in the debtor. Cf. Steele v. First National Bank In Wichita, 136 B.R. 278, 280-81 (Bankr.D.Kan.1991) (explicit language in plan). Ordinarily, once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. Pettibone, 935 F.2d at 122; accord Barker Medical, 55 B.R. at 436-37 (the future income of a Chapter 11 debtor is not subject to the supervision or control of the court). A debtor is usually without the protection of the bankruptcy court as well. Pettibone, 935 F.2d at 122. One of the protections typically lost is the automatic stay. See United States Dept. of the Air Force v. Carolina Parachute Corp., 907 F.2d 1469, 1474 (4th Cir.1990). This is because confirmation not only customarily revests the property of the estate in the debtor, it also operates as a discharge of all dischargeable claims against the debtor, unless the plan otherwise provides. 11 U.S.C. § 1141(d). The grant of a discharge, in turn, lifts the automatic stay of acts against the debtor or the debtor’s property. 11 U.S.C. § 362(e)(2)(C). Typically, the purposes of the automatic stay are achieved at confirmation and the stay is not necessary thereafter.
However, Hillis’ first reorganization plan was atypical. The plan did not grant Hillis a discharge but specifically contemplated that any discharge of its debts would occur in the future. The plan did not return control of Hillis to the company’s sole stockholder, D. Hillis; but it did not transfer the assets of the company to another entity either. Instead the trustee, as the representative of the bankruptcy court, retained management and control over Hillis’ business. Hillis was not free to do what it pleased with its assets and property but rather the distribution of the company’s profits was strictly controlled. Unusually, the reorganization plan also provided that the bankruptcy court would be involved in the administration of the estate after confirmation.[14]
In essence, Hillis’ plan provided that the business would be conducted under court supervision via the trustee until all of Hillis’ creditors were paid. While day-to-day business decisions were to be made by Rowley, the corporation continued to operate under the aegis of the court and the oversight of the trustee. Rowley also contributed the investment capital to operate the business (for which he was to receive reimbursement) and he was granted compensation for his services. Nevertheless, Hillis’ plan makes clear that the purpose of the continued operation of the business was to pay back the company’s creditors under the supervision of the court. Only after the payment of all claims and expenses of the estate would Rowley be allowed to seek permission from the state to obtain Hillis’ automobile broker’s license and operate the business as the new owner free and clear of judicial intervention. Although there was a confirmed plan, the reorganization process continued post-confirmation. Hillis was not free to deal with its property and the world as it would have been if it had not been subject to the jurisdiction of the bankruptcy court. Cf. Healthco, 824 F.2d at 1460.
The situation that occurred here resembles the one that took place in North County Jeep and Renault, Inc. v. General Electric Capital Corp. (In re Palomar Track Corp.), 951 F.2d 229 (9th Cir.1991) (per curiam), cert. denied, - U.S. -, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992). There, an automobile dealership filed for Chapter 11 protection. North County, which thought it was going to obtain the business after the conclusion of the bankruptcy, agreed to operate the business under the trustee’s supervision pending the sale. (As it turned out, the debtor was ultimately sold to another purchaser). *590 There, as here, the operation of the business pending sale was necessary to preserve the corporation and the creditors’ interests.
The only significant difference between Palomar and this case is that here the debt- or and the creditors entered into, and the bankruptcy court approved, a plan of reorganization that formally established the manner in which the debtor was to be managed until the contemplated sale of the business occurred. Cf. P.C. Ltd., 929 F.2d at 204 n. 1 (recognizing that a plan could provide for interim operation of a business pending sale). Here, as in Palomar, the entity that operated the business in the meantime was not free to conduct it in the same manner as the manager of a business not in bankruptcy, because operation of the business remained subject to the supervision of the court and the trustee.
Therefore, based on our analysis of the language, purposes, and context of Hillis’ first reorganization plan, we conclude that after confirmation Hillis’ corporate property remained part of the estate to which the automatic stay continued to apply.[15] While Hillis’ plan is textually ambiguous on this question, all extrinsic evidence points directly towards the conclusion that Hillis’ corporate property did not revest in the debtor at confirmation. We believe that any other interpretation of the extrinsic evidence, even construed in the light most favorable to the appellees, would be clearly erroneous and, therefore, that the intent of the drafters of Hillis’ plan can be established as a matter of law. Consequently, a remand to the district court for an evidentiary hearing on this question is unnecessary in this case. See Stratford, 635 F.2d at 368-69.
WTiile confirmation of a plan emancipates most debtors, Hillis remained a ward of the court. See Pettibone, 935 F.2d at 122. Hillis did not control its own corporate property, which remained under court supervision and continued as property of the estate. Because Hillis’ corporate property was still property of the estate, it remained under the protection of the automatic stay. The effectiveness of the bankruptcy court’s continued supervision of Hillis and its administration of the estate for the benefit of the creditors depended on the court’s being able to prevent any efforts to exercise control over the property of the estate. The DCCA’s dissolution proceeding was such an action. That being the ease, 11 U.S.C. section 362(a)(3) protect/ ed Hillis from dissolution by the DCCA unless some exception to the automatic stay applied.
2. No Section 362(b) Automatic Stay Exception Applies
Eleven U.S.C. section 362(b) establishes several exceptions to the automatic stay. Exceptions to the automatic stay should be read narrowly. Treasurer of Snohomish Cty. v. Seattle First Nat. Bank (In re Glasply Marine Industries, Inc.), 971 F.2d 391, 394-95 (9th Cir.1992); Stringer v. Huet (In re Stringer), 847 F.2d 549, 552 (9th Cir.1988). The “precise wording of the stay and its exceptions should be emphasized.” Stringer, 847 F.2d at 552 n. 5 (quoting 2 L. King Collier on Bankruptcy ¶ 362.04[1], at 362-33 (15th ed. 1988)). Of possible relevance here are the governmental powers exceptions contained in subsections (b)(4) and (b)(5).[16] See NLRB v. Continental Hagen *591 Corp., 932 F.2d 828, 832-35 (9th Cir.1991). Appellees rely on them only tangentially and by their terms they do not apply here. The precise wording of section 362(b)(4) explicitly creates an exception to the stay imposed under section 362(a)(1). Likewise, section 362(b)(5) is solely an exception to a stay imposed under section 362(a)(2).[17] There is no governmental powers exception to section 362(a)(3), the provision at issue here. See Dallas-Fort Worth Regional Airport Board v. Braniff Airways, Inc. (In re Braniff Airways, Inc.), 21 B.R. 181, 182 (Bankr.N.D.Tex.1982); see also Board of Governors of the Federal Reserve System v. MCORP Financial Inc., - U.S. -, -, 112 S.Ct. 459, 464, 116 L.Ed.2d 358 (1991) (applying subsection (b)(4) as an exception to subsection (a)(1) and noting that under the circumstances the governmental action did not affect control over property of the estate and thereby implicate subsection (a)(3)).
Even if the precise wording of the various provisions of the stay and their exceptions were not controlling,[18] we would still hold that the governmental powers exceptions do not apply here. We agree with the Eighth Circuit that the terms “police or regulatory power” as used in those exceptions refer to the enforcement of state laws affecting health, morals, and safety but not regulatory laws that directly conflict with the control of the res or property by the bankruptcy court. In re Missouri v. U.S. Bankruptcy Court for the E.D. of Ark., 647 F.2d 768, 776 (8th Cir.1981), cert. denied, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982). The facts of that case are almost identical to the instant dispute. There, the state of Missouri attempted to liquidate a grain warehouse business, which was in Chapter 11 reorganization, for failure to comply with state law in the operation of its business. The Eighth Circuit ruled that this effort directly conflicted with the control of the property by the bankruptcy court and was, therefore, subject to the provisions of the automatic stay regardless of the governmental power exceptions.[19] Likewise, because the DCCA’s action directly interfered with the bankruptcy court’s control over the property of the estate, we conclude that the governmental powers exceptions to the automatic stay are'inapplicable under the facts of this case. Cf. Commonwealth Oil Refining Co. v. United States Envtl. Protection Agency (In re Commonwealth Oil Co.), 805 F.2d 1175 (5th Cir.1986) (under governmental powers exception debtor may be forced to comply with environmental laws notwithstanding the fact that debtor forced to expend funds in order to comply), cert. denied, 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987); Penn Terra Ltd. v. Dept. of Envtl. Resources, Com *592 monwealth of Penn., 733 F.2d 267 (3d Cir.1984) (same).
3. Twenty-Eight U.S.C. Section 959(b) Does Not Operate as an Independent Exception to the Automatic Stay.
Appellees strenuously contend that 28 U.S.C. § 959(b) justifies the DCCA’s dissolution of Hillis and that this provision operates as an independent exception to the automatic stay, although it is not a part of the Bankruptcy Code. They also argue that subsection (b) demonstrates that Hawaii law was not preempted by the Bankruptcy Code. Section 959(b) provides:
[A] trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.
We conclude that appellees’ contention is incorrect and that section 959(b) does not function as an exception to the automatic stay. Moreover, we find that a preemption analysis is not relevant here.
Bankruptcy does not grant debtors rights greater than those they would receive outside bankruptcy. Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). It is beyond question that section 959(b) requires a trustee to manage a business in accordance with state law, as any other person must. E.g. California v. Gillis, 69 F.2d 746, 747-48 (9th Cir.), aff'd sub nom, Gillis v. California, 293 U.S. 62, 55 S.Ct. 4, 79 L.Ed. 199 (1934) (district court lacks the power to authorize a receiver to conduct the affairs of the estate contrary to state law).[20] However, the provision does not give state agencies a license to ignore the automatic stay of the Bankruptcy Code in order to enforce state laws. Rather, the relevant case law demonstrates that section 959(b) operates as a weighty policy consideration that will in many circumstances require a bankruptcy court to grant relief from the automatic stay, if it is requested, so that a state may enforce its laws. See, e.g., Continental Air Lines v. Hillblom (In re Continental Air Lines), 61 B.R. 758 780-81 (S.D.Tex.1986) (while one or two decisions hold that section 28 U.S.C. section 959(b) is an exception to 11 U.S.C. section 362, the better view is that the statutes can be harmonized); In re Kish, 41 B.R. 620, 622-23 (Bankr.E.D.Mich.1984) (same).
In support of their position that 28 U.S.C. section 959(b) provides an automatic exception to the automatic stay, appellees rely heavily upon The Briarcliff v. The Briarcliff Tenants Ass’n (In re The Briarcliff), 15 B.R. 864 (D.N.J.1981), a case arising under the old Bankruptcy Act, which was superseded by the Code in 1978. Under the Bankruptcy Act the automatic stay was far more limited than it is under the Code. Midlantic Nat’l Bank v. New Jersey Dept. of Environmental Protection, 474 U.S. 494, 504, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (1986). It covered only suits against the bankrupt that litigated claims dischargeable in bankruptcy and arising from pre-filing activity. The Briarcliff, 15 B.R. at 865. In The Briarclijf, the landlord/debtor in possession sought from the bankruptcy court a stay against the proceedings of the local rent control board pertaining to an allegedly illegal rent increase. Id. The bankruptcy court denied the motion and the district court affirmed. The district court in The Briarclijf expressly relied on the limits of the stay under the Act, holding that the stay was inapplicable because “[t]he action of the Cliffside Park Rent Leveling Board is not a proceeding which will litigate a claim dischargeable in bankruptcy.” Id. at 866. As an alternate ground for affirmance, The Briarclijf district court concluded that 28 U.S.C. section 959(b), as interpreted in Gillis and its progeny, prevented a bankruptcy court from interfering with the functioning of the rent control board. 15 B.R. at 868. Because the debtor in possession/landlord had asked for relief beyond the power of the court, the motion could not be granted. Id. While The Briarclijf represents a correct *593 application of 28 U.S.C. section 959(b), it sheds no light on the relationship between that provision and the broad automatic stay provisions of the Bankruptcy Code.
None of the Code cases the appellees rely upon holds that 28 U.S.C. section 959(b) is an exception to 11 U.S.C. section 362(a). Some merely stand for the uncontroversial proposition that a trustee must carry out his duties in conformity with state law. See Midlantic Nat’l Bank v. New Jersey Dept. of Envtl Protection, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) aff'g, In re Quanta Resources Corp., 739 F.2d 912 (3rd Cir.1984) (trustee may not abandon property in violation of state environmental laws); Robinson v. Michigan Consol. Gas Co., 918 F.2d 579 (6th Cir.1990) (state law landlord duties not preempted by Bankruptcy Code); Saravia v. 1736 18th Street, N.W., Ltd. Partnership, 844 F.2d 823, 826-27 (D.C.Cir.1988) (local housing code applies to debtor in possession). Furthermore, not one of these cases involves the automatic stay.
Three of the cases that appellees contend demonstrate that section 959(b) is an exception to 11 U.S.C. section 362(a) do involve the automatic stay: Cournoyer v. Town of Lincoln, 790 F.2d 971 (1st Cir.1986); Wilner Wood Products v. Maine Dept. of Envtl. Protection, 128 B.R. 1 (D.Me.1991); Will Rogers Jockey & Polo Club, Inc. v. Oklahoma Horse Racing Comm’n (In re Will Rogers Jockey & Polo Club, Inc.), 111 B.R. 948 (Bankr.N.D.Okla.1990). However, in all three of these cases one or both of the governmental powers exceptions to the automatic stay were found to be applicable.[21] The Coumoyer and Will Rogers courts relied upon 28 U.S.C. section 959(b) merely as support for their conclusions that there was no conflict between federal and state policy interests in allowing for state regulation under the governmental powers exceptions. See 790 F.2d at 977; 111 B.R. at 955. In Wilner Wood the district court determined that 28 U.S.C. section 959(b) prevented a bankruptcy court from enjoining under its inherent equitable powers, 11 U.S.C. section 105(a), a state regulatory action that came within the governmental powers exception to the automatic stay. 128 B.R. at 2-3. Thus, none of these cases holds that section 959(b) functions as an independent exception to the automatic stay. We decline to do so as well.
Congress crafted several explicit exceptions to the automatic stay, two of which address the needs of governmental regulation. Were we to read section 959(b), which is broadly written, as an exception to the automatic stay, we would render superfluous the narrowly drawn governmental powers exceptions. Furthermore, we note that Congress deliberately declined to create a governmental powers exception to the stay imposed by 11 U.S.C. section 362(a)(3) against acts that exercise control over the property of the estate. These considerations weigh heavily against appellees’ statutory interpretation and, along with the plain language of the text at issue, lead us to conclude that Congress did not intend section 959(b) to serve as an independent exception to the automatic stay.
We disagree with the appellees that the question here is whether Hawaii law was “preempted” by the Bankruptcy Code.[22] The issue here is not whether but how the state may go about enforcing its laws against a violator in bankruptcy when the governmental powers exceptions do not apply. The DCCA was free to file a motion in the bankruptcy court to lift the stay and to authorize the state to dissolve Hillis for failure to file the required corporate exhibits and filing fee. 11 U.S.C. § 362(d). See Missouri v. Bankruptcy Court, 647 F.2d at 777 (because bankruptcy court had jurisdiction and the automatic stay applied, any complaint for viola *594 tion of 959(b) should be addressed to the bankruptcy court). As a court of equity under the command of 28 U.S.C. section 959(b), the bankruptcy court would have been obliged to ensure that the DCCA’s interests were protected, while balancing these interests against those of the creditors and other persons who would have been affected by Hillis’ dissolution. If the decision of the bankruptcy court did not satisfy the DCCA, it could have immediately appealed that court’s ruling denying relief. However, the automatic stay prohibits all entities from engaging in self-help remedies that exercise control over property of the estate. Twenty-eight U.S.C. section 959(b) notwithstanding, the DCCA was not free to engage in such a self-help remedy. By doing so it violated the automatic stay of the Bankruptcy Code.
III. CONCLUSION
Because the DCCA’s dissolution action resulted in its exercising control over property of the estate, the automatic stay renders Hillis’ dissolution void ab initio. The state was required by the provisions and policies of the Bankruptcy Code to seek the permission of the bankruptcy court before taking any action. Had the DCCA sought the permission of the bankruptcy court to dissolve Hillis for failure to file corporate exhibits and pay its annual fees, 28 U.S.C. section 959(b) would have weighed in favor of allowing dissolution. However, it was for the bankruptcy court to balance the interests of all concerned and to make a determination whether to grant the DCCA relief from the stay. Because the DCCA’s dissolution of Hillis was of no effect, Hillis has standing under Hawaii law and Fed.R.Civ.P. 17(b) to bring and pursue the instant antitrust action. Consequently, the district court’s grant of summary judgment against Hillis is REVERSED and the case is remanded for further proceedings consistent with this opinion.[23]

. Chapter 416 of Hawaii Revised Statutes was repealed in its entirety in 1987.

. Because reorganization under the first plan had proven unsuccessful, a second plan of reorganization was confirmed by the bankruptcy court in November 1989.

. One of the defendants, General Motors Corporation, filed a different motion to dismiss Hillis' action for failure to state a claim against it. The district court granted this motion without prejudice.

. The district court also granted summary judgment against Rowley, who claimed to have standing due to a provision in the Plan of Reorganization that would eventually vest him with Hillis' automobile broker's license. The district court, however, held that Rowley lacked standing because Hillis’ license was non-transferable under state law. Haw.Rev.Stat. § 160-167.5 (1955). Appellants did not raise this issue in their opening brief and did so in their reply brief only in response to appellees’ contention that the issue had been abandoned. Issues raised for the first time in a reply brief will not ordinarily be reviewed on appeal. Security Pac. Nat'l Bank v. Kirkland (In re Kirkland), 915 F.2d 1236, 1241 n. 7 (9th Cir.1990). We depart from this general practice only under exceptional circumstances. Preservation Coalition, Inc. v. Pierce, 667 F.2d 851, 862 (9th Cir.1982). No such circumstances exist here. Moreover, Appellants' failure to raise Rowley's standing in their opening brief has left the arguments on both sides unclear and undeveloped. Therefore, the district court's determination that Rowley lacked standing will not be reviewed on appeal.

.Two unserved defendants and Doe defendants were named in the complaint. This does not affect the appealability of the district court's judgment. Patchick v. Kensington Publishing Corp., 743 F.2d 675, 677 (9th Cir.1984) (per curiam).

. In the majority of Chapter 11 cases, a trustee is not appointed but rather the debtor’s management maintains operation of the business. In such cases the debtor is known as the debtor in possession, which is a legally distinct entity. 11 U.S.C. § 1101(1). With minor exceptions, the debtor in possession has the same functions and obligations as a trustee. United States v. Whiting Pools, 462 U.S. at 200 n. 3, 103 S.Ct. at 2311 n. 3.

. In the district court Hillis relied primarily upon another subsection of the automatic stay provision: § 362(a)(1). The district judge correctly ruled that subsection (a)(1) is inapplicable because it stays only an "action or proceeding against the debtor that was or could have been commenced before the commencement of the case.” The DCCA could not have revoked Hillis’ charter until the corporation was two years in arrears on its presentation of exhibits and payment of fees. Haw.Rev.Stat. § 416-122. Hillis filed for bankruptcy in June 1984. It did not fall two years behind in its obligation to the DCCA until March 1985. Therefore, the DCCA's action could not have been brought until after the commencement of the case and § 362(a)(1) does not apply. Hillis has abandoned its reliance on subsection (a)(1) in this court.

. The Bankruptcy Code does not define "property”, and, therefore, courts must generally look to nonbankruptcy law for this determination. Farmers Markets, 792 F.2d at 1402.

. Appellee Honda Windward Inc. erroneously argues that § 1141(b) unambiguously states that all property of the estate is revested in the debtor upon confirmation. While appellee Servco Pacific Inc. quotes the language of § 1141(b), it, too, neglects to consider whether Hillis’ plan provided that the property of the estate did not revest in the debtor.

. Hillis also attempts to draw support for its contention that the estate continues post-confirmation from several Chapter 13 cases that so hold. However, among other differences between Chapters 11 and 13, the definition of property of the estate in Chapter 13 cases is more expansive than that in Chapter 11 cases and specifically includes property and earnings acquired after the commencement of the case and before the case is closed or converted to another chapter. 11 U.S.C. § 1306(a). Cf. § 541. Because of these differences Hillis’ reliance on Chapter 13 law in this context is misplaced.

.The retention of jurisdiction by the bankruptcy court does not per se continue the automatic stay. E.g., General Electric Credit Corp. v. Nardulli & Sons Co. (In re Nardulli & Sons Co.), 66 B.R. 871, 876 (W.D.Pa.1986). Regardless of any *588 plan provision, a bankruptcy court has statutory jurisdiction under 11 U.S.C. § 1142(b) to ensure that any act necessary for the consummation of the plan is carried out and it has continuing responsibilities to satisfy itself that the plan is being properly implemented. Chase Manhattan Bank N.A. v. Sultan Corp. (In re Sultan Corp.), 81 B.R. 599, 602 (9th Cir. BAP 1987); Findley v. Blinken (In re Joint E. & S.D. Asbestos Litigation), 982 F.2d 721, 750 (2d Cir.1992).

. In its complaint Hillis alleges that these failures were caused by defendants' conduct. As Hillis' antitrust suit was dismissed without an examination of its merits, we have no way of determining the truth of this allegation.

. Eleven U.S.C. § 503(b)(1)(A) allows the actual necessary costs and expenses of preserving the estate to be treated as an administrative expense. Administrative expenses have priority over all other claims. § 507(a)(1).

. The circumstances of Hillis' bankruptcy explain the unusual features of its plan. Hillis’ former president, namesake and sole shareholder had been involved in some misconduct. It was not considered desirable to return the management and control of the firm to him.

. We note that the DCCA was well aware of the unusual status of Hillis’ business post-confirmation. In August 1985, two months after confirmation of the plan, the DCCA, Hillis, and Rowley became parties to a settlement agreement pertaining to pending disciplinary actions against Hillis stemming from misconduct by the company’s previous management. The settlement agreement stated that the bankruptcy court has jurisdiction over Hillis and its motor vehicle's broker’s license and noted that the trustee would operate Hillis’ business until all its creditors were repaid. Not only does this agreement confirm our interpretation of Hillis' plan but it also shows that the DCCA knew Hillis’ corporate property was still subject to the control of the bankruptcy court and trustee.

. (b) The filing of a [bankruptcy] petition ... does not operate as a stay—•
(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power;
(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce *591 such governmental unit's police or regulatory power.

. Eleven U.S.C. § 362(a)(2) stays "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title.” Because the DCCA’s dissolution action occurred after the commencement of the bankruptcy case, § 362(a)(2) is not applicable here.

. Appellees cite Cournoyer v. Town of Lincoln, 790 F.2d 971, 974-75 (1st Cir.1986) in support of the proposition that the governmental power exceptions apply to stays imposed under § 362(a)(3). There, the First Circuit affirmed the decision of the district court which held that the automatic stay did not prevent a town from removing the inventory of used truck-parts dealership, under Chapter 11 protection, that had operated its business in violation of local zoning laws. Coumoyer did not consider the differences in language between the various stays and the applicable exceptions but rather treated the stay provisions as a piece. Coumoyer did not specifically hold that the governmental power exceptions applied to stays against acts exercising control over the property of the estate but that is the effect of the decision. Coumoyer is the only decision of which we are aware to apply the governmental powers exceptions to § 362(a)(3) stays. While that decision seems contrary to the plain language of the statute and inconsistent with the rule in this circuit that emphasizes the precise language of the provisions of § 362, it is in any event distinguishable from the present situation. See infra note 19.

.The Coumoyer court distinguished Missouri v. Bankruptcy Court on the grounds that the latter decision involved a regulation that was "pecuniary in nature” whereas the removal of the debtor estate’s property from a salvage yard was not to protect a pecuniary interest. While this seems an unduly narrow interpretation of the Eighth Circuit’s decision, assuming this were a valid distinction, it is not availing to the appellees. The facts of this case are far closer to Missouri v. Bankruptcy Court than to Cournoyer.

. Gillis dealt with the statutory predecessor to § 959(b), 28 U.S.C. § 124.

. As regards the Coumoyer decision see notes 18-19 supra.

. 11 U.S.C. § 1142(a) provides:
Notwithstanding any otherwise applicable non-bankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan....
This section demonstrates that Congress intended to preempt state laws and regulations relating to financial condition if they interfere with the execution of the plan. Because neither party has discussed this provision we decline to consider its applicability to this case.

. Our resolution of the automatic stay issue in Hillis’ favor makes it unnecessary for us to consider Hillis’ alternative arguments that it lacked proper notice of the DCCA’s intention to dissolve the corporation and that the district court should have deferred to the DCCA's determination that it had the authority to reinstate Hillis retroactively in January 1991.