**In re CAPTAIN BLYTHERS, INC., Debtor.**

**Captain Blythers, Inc., Appellant,**

**v.**

**Tevis T. Thompson, Jr., Chapter 7 Trustee, Appellee.**

**BAP No. NC–03–1372–BAP.
Bankruptcy No. 98–45385–JT.
Adversary No. 02–7171.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on May 12, 2004.

Filed June 18, 2004.

David N. Kuhn, Piedmont, CA, for Captain Blythers, Inc.

Daniel M. Linchey, Goldberg, Stinnett, Meyers & Davis, San Francisco, CA, for Tevis T. Thompson, Jr., Trustee.

Before BRANDT, AHART[1] and PERRIS, Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

Reorganized debtor Captain Blythers, Inc., operated under its confirmed chapter 11[2] plan for a considerable period. In addition to providing for ongoing operation, its plan called for continuing litigation of a major claim against its landlord, and application of any recovery to payment of creditors. Ultimately concluding that it could not continue to operate, Captain Blythers sold its other assets. Thereafter, the case was converted to chapter 7, and the trustee filed an adversary proceeding against debtor to determine the estate's rights to the prepetition cause of action. The bankruptcy court granted summary judgment for the trustee, denying the debtor's cross-motion. Captain Blythers made a broad post-judgment motion which the bankruptcy court denied, clarifying its earlier ruling.

Captain Blythers timely appealed the original order and the order denying the later motion. Concluding that, although this is not simply a liquidating chapter 11, *Consolidated Pioneer*[3] controls, we AFFIRM both orders.

## I. FACTS

Debtor is a California corporation formed in 1996, whose sole shareholder is Alfred Schlette. In November 1997, debtor began operating a restaurant situated on marina property which debtor leased from the City of Martinez. That winter, the debtor allegedly suffered business losses when the parking lot adjacent to the restaurant flooded. In June 1998, debtor filed a chapter 11 petition, and in January 1999, filed an adversary proceeding (No. 99–4024) against the City seeking to recover approximately $3.3 million in damages (the "Martinez Action").[4]

On 4 November 1999, the bankruptcy court confirmed the debtor's Third Amended Plan of Reorganization (the "Plan"), the relevant provisions of which are:

7.1 The payments to the holders of all Allowed claims will be funded [over 72 monthly payments] by the earnings and profits of the reorganized Debtor.

. . .

---

1. Hon. Alan M. Ahart, Bankruptcy Judge for the Central District of California, sitting by designation.

2. Absent contrary indication, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. All "Rule" references are to the Federal Rules of Bankruptcy Procedure. "FRCP" references are to Federal Rules of Civil Procedure. All "CCC" references are to the California Civil Code.

3. *In re Consolidated Pioneer Mortgage Entities,* 264 F.3d 803 (9th Cir.2001).

4. The parties advised at argument that the Martinez Action is "on hold" pending resolution of an appeal to the Ninth Circuit regarding the City's insurance coverage.

9.2 Any claims in favor of the Debtor and Debtor–in–Possession, including claims arising under any provision of the Bankruptcy Code, **shall be fully reserved and may be enforced by the reorganized Debtor for the benefit of creditors in order of priority following confirmation of the Plan.**

9.3 Confirmation of the Plan shall operate as a discharge of the Debtor and Debtor–in–Possession pursuant to Section 1141 of the Bankruptcy Code, provided that nothing in the Plan shall limit the legal effect of such Section on the Debtor and Debtor–in–Possession or the reorganized Debtor.

. . .

10.1 The Bankruptcy Court shall retain jurisdiction to construe and enforce the Plan, resolve claims and other controversies, and enter appropriate orders concerning the bankruptcy case.

(emphasis added). Captain Blythers operated and made payments under the Plan until June 2002, and continued to litigate the Martinez Action.

Meanwhile, in April 2002, although the Plan did not contemplate a sale and assigned a liquidation value on tangible assets of $41,000, debtor filed a § 363 motion to sell its tangible assets for $986,000. The motion was supported by Schlette's declaration stating that the Martinez Action would nevertheless go forward, and that any funds recovered would go to creditors. According to counsel at argument of this appeal, the bankruptcy court did not grant the motion, considering it unnecessary. The debtor sold the assets and distributed the proceeds to creditors under the Plan, leaving unpaid approximately $250,000 in allowed claims.

Upon the U.S. Trustee's motion, the bankruptcy court converted the case to chapter 7, appointing Tevis Thompson, Jr., as trustee in June of 2002. He thereafter filed a complaint to declare the Martinez Action estate property, and moved for summary judgment that the conversion operated to revest the Martinez Action in the chapter 7 estate. Debtor responded, arguing that

[t]he confirmed plan does not state that such claims are being held for the creditors. It states that enforcement is for their benefit; in a sense, they are to be contractual third-party beneficiaries of the results attained by the reorganized debtor in enforcing its lease with the City .... Such language, without more, surely does not rise to the level of creating a trust and the attendant fiduciary relationship.

Opposition to Trustee's Motion for Summary Judgment, pages 13–14. Debtor's attorney and Schlette both averred that it was "never the intent that the Martinez litigation would be pursued for the exclusive benefit of creditors." Declaration of Alfred Schlette, 16 May 2003 at 3 and Declaration of David Kuhn, 16 May 2003 at 3.

After a contested hearing on 3 June 2003, the bankruptcy court, applying *Consolidated Pioneer*, entered an order granting the trustee's motion and denying the debtor's, concluding in part:

[A]ll of the proceeds of the Martinez Action were dedicated under the Plan to the payment of creditor claims, and the reorganized debtor retained no beneficial interest. It follows that the Plan's "explicit provisions" dedicate the Martinez Action to the payment of creditors, the "primary beneficiaries" (in fact, the only beneficiaries) of the Martinez Action under the Plan.

. . .

Thus, this court retained jurisdiction under the Plan to assure that the Martinez Action is prosecuted in good faith

for the benefit of the creditors herein, and that all the proceeds of any recovery are paid to creditors.

Decision on Cross–Motions for Summary Judgment, at 5–6.

Debtor appealed and also filed a motion for reconsideration. The bankruptcy court denied the motion but clarified its earlier ruling:

> Here, the plan devoted all the litigation proceeds to the payment of creditor claims. It did not provide for any litigation proceeds to be retained by the reorganized debtor (although that may have followed had the debtor performed the plan and paid its creditors in full if sufficient litigation proceeds remained).
>
> . . .
>
> [T]he court hereby clarifies that it did not intend to suggest that the reorganized debtor would not have had a residual interest in the litigation proceeds, had [it] not defaulted . . . and paid its creditors in full.

Memorandum Re Motion for Reconsideration, 21 July 2003 at 2–3.

On 30 July 2003, debtor filed an amended Notice of Appeal, seeking review of the order denying reconsideration as well as the prior order.

## II.  JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(b)(1), (b)(2)(A) and (L), and we do under 28 U.S.C. § 158(c).

## III.  ISSUES [5]

A.  Whether the Martinez Action revested in the chapter 7 estate upon conversion; and

---

5.  We do not have before us, nor do we now decide, whether the provisions of the Plan or those of Chapter 7 govern further distribu-

B.  Whether the bankruptcy court abused its discretion in denying debtor's motion for reconsideration.

## IV.  STANDARDS OF REVIEW

■  A.  We review the granting of summary judgment de novo. *In re Baldwin*, 245 B.R. 131, 134 (9th Cir. BAP 2000), *aff'd*, 249 F.3d 912 (9th Cir.2001). Viewing the evidence in the light most favorable to the non-moving party, we must determine whether there are any genuine issues of material fact and whether the trial court correctly applied relevant substantive law. *In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*, 819 F.2d 214, 215 (9th Cir.1987).

■  B.  Conclusions of law, including the bankruptcy court's interpretation of the Bankruptcy Code and Rules, are reviewed de novo. *In re Staffer*, 262 B.R. 80, 82 (9th Cir. BAP 2001), *aff'd*, 306 F.3d 967 (9th Cir.2002).

■  C.  Questions of contract interpretation are subject to de novo review unless extrinsic evidence was introduced on issues such as intent, *In re Bartleson*, 253 B.R. 75, 78–79 (9th Cir. BAP 2000), in which event the pertinent factual findings are reviewed for clear error *In re Ankeny*, 184 B.R. 64, 68 (9th Cir. BAP 1995).

■  D.  We review an order denying a motion for reconsideration for abuse of discretion. *In re Edelman*, 237 B.R. 146, 150 (9th Cir. BAP 1999). A court abuses its discretion if it bases its ruling on either an erroneous view of the law or a clearly erroneous assessment of the evidence. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

---

tions should the trustee successfully recover on the Martinez Action.

## V. DISCUSSION

■ We are confronted with the interplay between a confirmed plan and a later conversion of the case: did conversion revest the Martinez Action in the chapter 7 estate?

### A. *Conversion following a Confirmed Plan*

Under § 1112(b), a bankruptcy court may convert a case to chapter 7 when it is in the best interest of the creditors and the estate, "for cause, including ... (7) inability to effectuate substantial consummation of a confirmed plan; (8) material default by the debtor with respect to a confirmed plan ...."

There is no direct answer in the Code to the question of what happens to property of the debtor in a post-confirmation conversion. While the provisions of a confirmed plan bind the debtor and any pre-confirmation creditors, § 1141(a), § 348 does not explicitly address the effect of a post-confirmation conversion. Section 1141(b) provides: *"[E]xcept as otherwise provided in the plan or the order confirming the plan,*[6] the confirmation of a plan vests all of the property of the estate in the debtor."* (emphasis added). And under § 1141(c), with exceptions not here pertinent, "the property dealt with by the plan is free and clear of all claims of creditors ..."

In *Consolidated Pioneer,* six related entities filed chapter 11. Pioneer Liquidating Corporation ("PLC") was specifically formed to take title to assets of all six estates, liquidate those assets, and to resolve and pay creditor and investor claims. When the liquidating plan failed to produce enough proceeds, and PLC refused to make an accounting, the bankruptcy court converted the confirmed cases to chapter 7. Affirming, the Ninth Circuit found that PLC acted as a liquidating trust and owed fiduciary duties to investors.

■ "Although typically confirmation of a plan 'terminates the existence of the estate[,] ... reversion of property from the estate to the debtor upon confirmation contained in 11 U.S.C. § 1141(b) is explicitly subject to the provisions of the plan.'" *Consolidated Pioneer,* 264 F.3d at 807, quoting *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n.,* 997 F.2d 581, 587 (9th Cir.1993).

Under *Consolidated Pioneer,* two plan components determine whether an asset revests in a chapter 7 estate post-conversion: an explicit provision regarding the distribution of future proceeds of an asset to creditors, and the retention of broad powers in the bankruptcy court to oversee implementation of the plan. 264 F.3d at 807. Applying § 1141(b) and interpreting the "language and purpose" of the plan there, the Ninth Circuit held that assets which vested in debtor upon confirmation revested in the chapter 7 estate upon conversion. *Id.*

*Consolidated Pioneer* rested on the foundation laid eight years earlier in *Hillis Motors.* There the Ninth Circuit considered the plan's clear purpose to pay back creditors and the court's involvement in the plan's administration, and held that the corporate assets there remained in the estate post-confirmation because of the plan's provisions, 997 F.2d at 589. A number of bankruptcy courts have likewise held revesting post-conversion depends on

---

**6.** As the confirmation order is not in the excerpts of record appellant provided to us, Rule 8006, we are entitled to presume that appellant does not regard it as helpful to its appeal. *In re Gionis,* 170 B.R. 675, 680–81 (9th Cir. BAP 1994), *aff'd on other grounds,* 92 F.3d 1192 (9th Cir.1996) (table).

plan provisions. *See Consolidated Pioneer*, 264 F.3d at 807, n. 5.

Although the Plan is not a liquidating plan, and there is no serious argument that a trust of the assets other than the Martinez Action was created, *Consolidated Pioneer* still applies: we must determine if the two prongs are met and ascertain the "language and purpose" of the Plan to determine if that asset reverts to the estate post-conversion.

## B. *"Language and Purpose"*

██ A chapter 11 plan resembles a consent decree and should be construed as a contract. *In re Penberthy*, 211 B.R. 391, 395 (Bankr.W.D.Wash.1997), *unpublished District Court affirmance aff'd in part, dismissed in part*, 199 F.3d 1333 (9th Cir. 1999) (table). In interpreting the Plan, we look to state law for guidance. *Bartleson*, 253 B.R. at 84; *Hillis Motors*, 997 F.2d at 588 (citations omitted).

██ California state law directs the fact-finder to interpret the Plan so "as to give effect to the mutual intention of the parties as it existed at the time of contracting ...." CCC § 1636. Also, under California law, ambiguities in a contract are generally construed against the drafter. *Ponder v. Blue Cross of Southern California*, 145 Cal.App.3d 709, 718, 193 Cal.Rptr. 632, 636 (1983); *In re Westside Print Works, Inc.*, 180 B.R. 557, 560 (9th Cir. BAP 1995).

### 1. *Plan Interpretation*

Paragraph 7.1 of the Plan provides that payments to allowed claim holders are to be funded by debtor's earnings and profits, and it does not depend on the Martinez Action for its terms and implementation. However, we must also construe and give meaning to the Plan's other operative provisions. *See In re Affordable Housing Dev. Corp.*, 175 B.R. 324, 329–30 (9th Cir.

BAP 1994) (under California law, "one phrase of a contract should not be interpreted so as to render another phrase of the contract meaningless").

Paragraph 9.2 is permissive, not mandatory: it reserves any claims in favor of the debtor and debtor in possession which *"may be enforced by the reorganized Debtor for the benefit of creditors* in order of priority following confirmation of the Plan." (emphasis added). While it preserves debtor's rights, it does so expressly for the creditors' benefit.

Debtor asserts that "enforcement for the benefit of creditors" differs from "holding claims for the creditors," in that the former means that creditors who receive anything out of the litigation proceeds are third-party beneficiaries, whereas the latter gives creditors an enforceable contractual claim. This interpretation lacks merit: debtor cites no authority to support the proposition that creditors may be treated as third-party beneficiaries of a single, permissive provision of a confirmed plan. The Plan is essentially a contract between debtor and its creditors, its purpose is to pay back creditors, and the creditors are directly and expressly benefitted by its terms. And if the creditors are third-party beneficiaries, who then (besides debtor) are the contract parties?

Turning to Paragraph 9.3, the first clause expressly relates to discharge and is unconnected to the issue of revesting; the second clause states that "nothing in the Plan shall limit the legal effect of [§ 1141] on the Debtor, Debtor–in–Possession or the reorganized Debtor." Under § 1141, plan confirmation discharges the debtor and revests estate property in debtor. *Southwest Marine Inc. v. Danzig*, 217 F.3d 1128, 1140 (9th Cir.2000). Debtor cites no authority (nor have we found any) that a discharge has any effect except

upon the debtor's future liability for pre-confirmation debts.

If debtor's argument is that the "nothing shall limit" language undoes the commitment of the Martinez Action proceeds to pay the creditors, it is doubtful that any creditor would have gleaned the meaning from these words that the debtor asks us to give them; at best, it is ambiguous. We must therefore analyze the Plan in the context of the entire proceedings.

### 2. *Disclosure Statement.*

Here, Captain Blythers was the Plan's proponent, and there is no evidence in the appellate record of the extent of other parties' participation in the confirmation process: other than declarations of the debtor's principal and counsel, little else in the record assists in interpreting the Plan's language and purpose.

But the Amended Disclosure Statement is helpful, as it is

> the single most relevant document, after the plan itself, for ascertaining the intent of the parties. The disclosure statement's purpose is to give creditors information on which to base their acceptance or rejection of a plan.

*Penberthy,* 211 B.R. at 396. It contains statements which are similar to the Plan's, as well as some statements which the Plan does not contain, but which are not inconsistent with it:

- "The Debtor intends to pursue its claims against the City of Martinez in the course of the Chapter 11 proceeding and has commenced an adversary proceeding thereon" (5:7–11);[7]

- "[E]arnings and profits from the operating revenues of the business of the reorganized Debtor will be used to pay, on a regular monthly basis, the required monthly payments under the plan . . . ." (5:21–23; see also 9:9–10);

- "Any recovery from the City of Martinez based upon the claims of the Debtor against it will be paid to creditors in order of priority" (7:3–5);

- "The tangible assets to be devoted to implementing the plan of reorganization are the restaurant equipment, fixtures and furniture. In addition, the Debtor owns a 1989 Jeep vehicle. The estimated liquidation value of such tangible assets is approximately $41,000. Such liquidation value does not include the value of the claims of the Debtor against the City of Martinez." (8:21–9:2);

- Liquidation would generate $31,500–$48,500 and explicitly excludes "consideration of the claims of the Debtor against the City of Martinez" (10:21–11:26).

Interpreting the Plan in light of the Amended Disclosure Statement, we conclude that the debtor's intent was to litigate the Martinez Action and, if successful, distribute any proceeds to creditors to complete payment in full. Although debtor's principal and its attorney drafting the Plan may have subjectively intended distribution to be discretionary, that intent is not explicit, and we must construe any ambiguity against the debtor as drafter. *Ponder,* 145 Cal.App.3d at 718, 193 Cal. Rptr. 632; *Westside Print Works,* 180 B.R. at 560.

### C. *Broad Powers*

We must also consider *Consolidated Pioneer's* second prong, that the plan "gives the bankruptcy court broad powers to oversee implementation of the plan." 264 F.3d at 807. Comparing the provision in

---

**7.** The references are to page numbers and lines in the Amended Disclosure Statement.

the *Consolidated Pioneer* plan, which empowered the bankruptcy court to:

> determin[e] all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of this Plan, including, without limitation, the actions of the Board of Directors and the shareholders of the Liquidating Corporation; [and] determin[e] such other matters as may arise in connection with this Plan or the Confirmation Order[ ]

(*id.* at 805) with paragraph 10.1 of the Plan:

> [t]he Bankruptcy Court shall retain jurisdiction to construe and enforce the Plan, resolve claims and other controversies, and enter appropriate orders concerning the bankruptcy case[,]

we see no significant difference, nor has the debtor explicated any.

Nor is it evident that such plan provisions add anything to the bankruptcy court's post-confirmation statutory powers:

> The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

§ 1142(b). Finally, "[a]s yet a further precaution, most confirmation orders and many plans explicitly provide for continued bankruptcy jurisdiction over various disputes arising from the plan." *Jacobson v. AEG Capital Corp.*, 50 F.3d 1493, 1501 (9th Cir.1995) (citation omitted); *see also In re Jorgensen*, 66 B.R. 104, 108 (9th Cir. BAP 1986).

▮▮▮ Such provisions, although binding on the debtor and creditors, are probably redundant: "retained" jurisdiction is not created simply by including such a term in a plan or confirmation order. *In re Continental Airlines*, 236 B.R. 318, 323–24 (Bankr.D.Del.1999), *aff'd*, 2000 WL 1425751 (D.Del.2000); *and aff'd*, 279 F.3d 226 (3rd Cir.2002), citing *In re Almarc Corp.*, 94 B.R. 361, 365 (Bankr.E.D.Pa. 1988) ("parties cannot confer subject matter jurisdiction by agreement").

Thus, although the second *Consolidated Pioneer* prong is easily satisfied by the Plan here (and, in our experience, most others), it is not evident that the requirement adds much to the revesting analysis.

## D. *Judicial Estoppel*

▮▮▮ When a party asserts a position inconsistent with one taken in a previous proceeding, the doctrine of judicial estoppel is implicated. *Donaldson v. Bernstein*, 104 F.3d 547, 555 (3d Cir.1997); *In re Cheng*, 308 B.R. 448, 452 (9th Cir. BAP 2004) (one form of judicial estoppel is "preclusion of inconsistent positions that estops a party from gaining an advantage by taking one position and then seeking another advantage from an inconsistent position").

We conclude that debtor is judicially estopped from taking a position which is inconsistent with prior statements made to secure plan confirmation, such as its Plan and Amended Disclosure Statement. That estoppel reinforces the bankruptcy court's ruling.

## E. *Motion for Reconsideration, etc.*

Debtor's post-judgment motion sought "to amend findings of fact, alter or amend order and/or judgment, for a new trial, relief from judgment and/or for reconsideration of the prior order and judgment." Debtor amended its notice of appeal to include review of the order denying the motion.

This is Commander (later Vice Admiral) Carter's approach:[8] referencing every possible basis for relief, without citing a particular Code section or Rule, or outlining the elements to be satisfied.

The Rules do not recognize a motion for reconsideration. *See In re Smith,* 242 B.R. 694, 698 n. 3 (9th Cir. BAP 1999) (Because of the ambiguity, a motion for reconsideration has been dubbed "a motion asking for trouble.") Where the time for appeal has expired, a motion for reconsideration is construed as a motion for relief from a judgment under FRCP 60(b) applicable in bankruptcy via Rule 9023. *In re Negrete,* 183 B.R. 195, 197 (9th Cir. BAP 1995), *aff'd,* 103 F.3d 139 (9th Cir.1996) (table).

As the motion here was brought within ten days of entry of the judgment, it is a motion to amend findings and conclusions under FRCP 52(b), applicable in bankruptcy by Rule 7052, or a motion to alter or amend the judgment under FRCP 59(a), applicable in bankruptcy by Rule 9023. *See In re Edelman,* 237 B.R. at 150–51; *see also In re Weiner,* 208 B.R. 69, 73 (9th Cir. BAP 1997), *rev'd on other grounds,* 161 F.3d 1216 (9th Cir.1998); *Negrete,* 183 B.R. at 197

Whichever, debtor's briefs do not address the order denying its motions, waiving the issue. *In re Branam,* 226 B.R. 45, 55 (9th Cir. BAP 1998), *aff'd,* 205 F.3d 1350 (table) (9th Cir.1999) (issue not adequately addressed by debtor in either its opening or reply brief is deemed abandoned).

## VI. CONCLUSION

Construing the language and purpose of the Plan in light of the Amended Disclo-

sure Statement and following *Consolidated Pioneer,* the bankruptcy court correctly ruled that the Martinez Action reverted to the chapter 7 estate upon conversion.

In view of appellant's waiver, we do not review the order denying debtor's motion for reconsideration.

We AFFIRM both orders.

---

8. In the original context, involving Talos missiles and assorted aircraft including MiG–21s, and not intended to be taken seriously:

"Shoot 'em all down, and sort 'em out on the ground."