

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>MP REORGANIZATION,<br>　　　　　　Debtor. | BAP No. NV-25-1026-BCN<br><br>Bk. No. 22-14422-nmc |
| RYAN DREXLER,<br>　　　　　　Appellant,<br>v.<br>EMPERY TAX EFFICIENT, LP,<br>　　　　　　Appellee. | Adv. No. 23-01093-nmc<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Natalie M. Cox, Chief Bankruptcy Judge, Presiding

Before: BRAND, CORBIT, and NIEMANN, Bankruptcy Judges.

## INTRODUCTION

Ryan Drexler appeals an order denying partial summary judgment on two of his three counterclaims against Empery Tax Efficient, LP ("Empery"), and granting partial summary judgment on Mr. Drexler's same counterclaims to Empery. Empery sued Mr. Drexler for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment involving a prepetition intercreditor and subordination agreement ("ICA").

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

1

Mr. Drexler, in turn, filed similar counterclaims against Empery based on the ICA. Mr. Drexler then moved for partial summary judgment on his counterclaims for breach of contract and declaratory judgment; Empery opposed the motion and cross-moved for partial summary judgment on Mr. Drexler's same two counterclaims. The bankruptcy court summarily ruled that Mr. Drexler's motion was "denied" and Empery's motion was "granted" based on the "arguments contained in Empery's pleadings."

As explained below, this appeal is moot as to Mr. Drexler's request for a determination that the ICA was unenforceable or should be rescinded based on Empery's alleged material breach. However, the issues of whether Empery breached the ICA and whether Mr. Drexler was damaged in the form of attorney's fees as a result are live, and we conclude that genuine disputes exist as to these material facts. Therefore, the bankruptcy court erred in granting partial summary judgment to Empery. Conversely, it did not err in denying partial summary judgment to Mr. Drexler for this same reason. Accordingly, we DISMISS as MOOT in part, AFFIRM in part, and REVERSE in part and REMAND.

## FACTS[1]

### A.     The prepetition loans and parties' agreements

MusclePharm Corporation (now reorganized debtor, MP Reorganization, "Debtor") was a publicly traded company in the business of

---

[1] We exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy court, where appropriate. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

developing, marketing, and distributing sports nutrition products. Mr. Drexler was Debtor's CEO, chairman of its board, and its largest shareholder and debt holder.

In October 2021, Empery and Debtor entered into a Securities Purchasing Agreement, under which Empery made several loans to Debtor and in exchange Debtor issued to Empery various notes secured by Debtor's assets. As a condition for Empery's loans, Empery, Mr. Drexler, and Debtor executed the ICA, whereby Mr. Drexler agreed to subordinate his current or future secured loans made to Debtor to Empery's secured debt. Among other things, the ICA provided that Empery and Mr. Drexler would not take any action to contest or challenge, or assist or support anyone else in contesting or challenging, directly or indirectly, in any proceeding, the validity, priority, enforceability, or perfection of each other's debts or liens (ICA Section 10). Mr. Drexler also waived all rights as a junior creditor to object to or interfere with the manner in which Empery sought to enforce its rights and remedies under the senior loan documents (ICA Section 10). In the event of Debtor's bankruptcy, Mr. Drexler agreed that he would not object to or oppose any DIP financing agreements Empery proposed for Debtor or any sale of Debtor's assets securing Empery's debt under § 363[2] free and clear of Mr. Drexler's security interests or liens (ICA Sections 15.4 & 15.5).

---

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

**B.      Postpetition events**

**1.      Bankruptcy filing and DIP financing**

Debtor defaulted on the Empery loans, which led to litigation in New York state court. Empery prevailed and was authorized to conduct an Article 9 sale of Debtor's assets.

To stop Empery's sale, Debtor filed its chapter 11 bankruptcy case in Nevada on December 15, 2022. Mr. Drexler filed a proof of claim, asserting that he held a secured claim against Debtor for $10,872,081, and an unsecured claim for just under $12 million. Empery filed a secured proof of claim for $18,066,579.01.

Debtor then sought to obtain DIP financing from creditor White Winston Select Assets Funds, LLC ("White Winston"). Upon Empery's vociferous objection, Debtor changed course and filed a proposed DIP financing term sheet with Empery, which Mr. Drexler opposed. Empery's financing package required the appointment of an "independent director" to Debtor's board to oversee Debtor and make all decisions regarding DIP financing, the sale of Debtor's assets and plan of reorganization, and to investigate and perhaps pursue any estate causes of action. The bankruptcy court approved the Empery DIP financing.[3]

**2.      Plan support agreement, settlement, Debtor's proposed plans, and Empery's ICA enforcement motions**

In May 2023, Debtor filed a "plan term sheet" summarizing the terms for

---

[3] The bankruptcy court later found that the independent director "was anything but independent." Mem. 39:12 (May 20, 2024).

the forthcoming proposed Plan Support Agreement ("PSA") entered into by Debtor, Empery, White Winston, and the committee of unsecured creditors ("Committee"). The PSA proposed a § 363 auction sale of most of Debtor's assets that would run parallel with plan confirmation as a means to distribute the sale proceeds. In addition, Empery (Class 3) would hold an allowed secured claim for $18 million but assign any amount over $12 million to a liquidation trust for general unsecured creditors (Class 5), which proceeds would be used in part to pursue the estate's claims against Debtor's current and former directors and officers, including Mr. Drexler. The PSA further proposed that Mr. Drexler's secured and unsecured claims (Class 6) would be subordinated to all allowed administrative claims, allowed priority claims, and allowed general unsecured claims. Finally, White Winston, an out of the money junior creditor, would dismiss its adversary proceeding against Empery[4] and waive a distribution on its $8 million claim in exchange for 100% equity of the reorganized debtor and use of Debtor's net operating losses (valued at no less than $4.6 million).

Debtor also filed a Rule 9019 motion ("9019 Motion") seeking approval of the PSA. Mr. Drexler was the sole objector to the PSA and 9019 Motion, which Empery tried to have withdrawn under its power of attorney privileges in the ICA. Debtor also filed disclosure statements and proposed plans, the last plan being the Second Amended Plan ("Debtor's Plan").

---

[4] White Winston's adversary proceeding against Empery, if successful, would have benefitted Mr. Drexler in that his secured claim would be paid ahead of Empery's from any sale proceeds of Debtor's assets.

During this time, Empery filed two motions to enforce the ICA, arguing that Mr. Drexler was violating it by opposing the sale bid procedures, the PSA, the 9019 Motion, and Debtor's Plan, and filing a trustee motion.[5] In the second ICA enforcement motion, Empery sought to vote Mr. Drexler's rejection ballot for Debtor's Plan as an accepting ballot. The bankruptcy court denied both motions. As to the first ICA motion, the court found, in part, that it was premature to enforce the ICA or to find that either party breached it since no plan had yet been confirmed. Consequently, the court allowed Mr. Drexler's objections to proceed. As to the second ICA motion, the court found that, given the lack of evidence, it was unable to determine whether Mr. Drexler breached the ICA with his rejection ballot, and even if he had, there was no specific remedy stated in the ICA to address the breach.

In September 2023, the bankruptcy court held an auction after which it approved FitLife Brands, Inc. as a good-faith purchaser of Debtor's assets with the winning bid of $18.5 million. The court then held a hearing for approval of the PSA and 9019 Motion, and confirmation of Debtor's Plan.

In May 2024, the bankruptcy court issued a 66-page decision denying the PSA, 9019 Motion, and Debtor's Plan ("May 2024 Findings"). In short, the court found that the PSA and 9019 Motion "framed as a 'settlement'" failed to satisfy the *A & C Properties* factors. Further, Debtor's Plan was not proposed in good faith and violated the absolute priority rule by skipping Mr. Drexler's

---

[5] Mr. Drexler had filed a motion to appoint a chapter 11 trustee. Empery and Debtor opposed it. For reasons unknown, Mr. Drexler later stipulated to withdraw the motion with prejudice. A chapter 11 trustee was ultimately appointed in August 2024.

junior secured claim and providing a distribution to unsecured creditors to fund a litigation trust that, by all appearances, was likely intended to benefit the professionals. Moreover, it provided junior creditor White Winston with an unsupported windfall. Specifically, as to the proposed subordination of Mr. Drexler's secured claim, the court found that it lacked any legal or factual basis. Empery's proposed "gift" of 33% of its asserted $18 million secured claim to unsecured creditors was an impermissible class-skipping scheme that violated fundamental Bankruptcy Code priorities.

### 3. Empery/Drexler ICA adversary

Several months before the court issued its May 2024 Findings, Empery filed its adversary complaint against Mr. Drexler, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment with respect to the ICA. Empery alleged that Mr. Drexler violated ICA Sections 10 and 15 by: (a) challenging the amount of Empery's claim and credit bid; (b) opposing Empery's DIP financing and the sale of Debtor's assets; (c) opposing the PSA, 9019 Motion, and Debtor's Plan; and (d) seeking the appointment of a chapter 11 trustee that he later withdrew with prejudice.

Mr. Drexler denied generally Empery's allegations and asserted his own counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment. Mr. Drexler alleged that Empery materially breached ICA Section 10 by entering into and supporting the PSA, 9019 Motion, and Debtor's Plan, which provided no distribution for

7

his secured claim and altered its priority by providing for a distribution to unsecured creditors before his secured claim. Mr. Drexler alleged that Empery's breaches caused him substantial damages, including attorney's fees and costs. He further alleged that, as a result of Empery's material breach of its obligations under the ICA, Empery had forfeited its rights to enforce the ICA and was prohibited from seeking to enforce it.

### a. Cross-motions for partial summary judgment on Drexler's counterclaims

### i. Drexler's motion

Mr. Drexler moved for partial summary judgment on his first and third counterclaims against Empery for breach of contract and declaratory judgment ("PSJ Motion"). Relying in large part on the May 2024 Findings, Mr. Drexler argued that the undisputed facts established that Empery materially breached ICA Section 10 by negotiating, formulating, and supporting the PSA, 9019 Motion, and Debtor's Plan, which proposed to either obliterate his secured claim or change its status and priority by manipulating the distribution of the sale proceeds to bypass it in violation of the Bankruptcy Code. Under Debtor's Plan, argued Mr. Drexler, he would receive no distribution until unsecured creditors first received a distribution of up to $6 million through a trust. Had Empery's scheme been successful, he argued, it would have resulted in millions of dollars and value paid to others, including unsecured creditors and administrative claimants, ahead of his secured claim in derogation of the absolute priority rule and Empery's obligations under the

ICA. Mr. Drexler argued that Empery's material breaches caused him damages of at least $1.6 million in attorney's fees and costs.

### ii.     Empery's opposition and cross-motion

Empery opposed the PSJ Motion and filed a cross-motion for partial summary judgment on Mr. Drexler's first and third counterclaims for breach of contract and declaratory judgment ("Cross PSJ Motion"). In opposing the PSJ Motion, Empery argued that genuine disputes existed over material facts related to Mr. Drexler's performance under the ICA, Empery's alleged breach, the materiality of any breach, Empery's performance, and Mr. Drexler's damages as a result of any breach. Empery noted that it had not completed Mr. Drexler's deposition, and Mr. Drexler had not produced all requested documents.

Empery also argued that it never breached the ICA because it never took any action to contest or challenge Mr. Drexler's claim or its priority in violation of ICA Section 10. Rather, argued Empery, it rightfully negotiated with Debtor, White Winston, and the Committee to provide a portion of its recovery on its allowed claim to unsecured creditors through a proposed settlement, which was a necessary process of chapter 11. Empery argued that the PSA, 9019 Motion, and Debtor's Plan, which the bankruptcy court ultimately rejected, did not alter the priority of Mr. Drexler's secured claim, which Empery argued was out of the money absent these documents, as senior secured claims ahead of Mr. Drexler's would not be paid in full. Empery argued that Mr. Drexler's secured claim remained in the same

9

amount and priority as it was before the chapter 11 case was filed, and it remained in that same amount and junior to Empery. At minimum, argued Empery, a question of fact existed as to whether there had been any impact on Mr. Drexler, and if so, whether it was sufficient to find a breach.

In support of its Cross PSJ Motion, Empery argued that Mr. Drexler had not presented any facts to support his position that Empery breached the ICA, and because there were no genuine issues of material fact in dispute, Empery was entitled to judgment as a matter of law. Empery argued that Mr. Drexler's counterclaim for breach of the ICA was premised on him having a secured claim, but he failed to provide sufficient evidence to support one.

Empery argued that, even if the court did find that it breached ICA Section 10, the court could not find that Mr. Drexler suffered damages, as the priority of his claim and right to payment remained the same as it did before the PSA, 9019 Motion, and Debtor's Plan. In addition, argued Empery, Mr. Drexler could not establish damages because there was no money left over for his secured claim, if it even existed. Mr. Drexler was out of the money not because of Empery's actions, but because the sale proceeds were insufficient to satisfy senior claims.

### iii. Drexler's opposition to Empery's cross-motion

In opposing Empery's Cross PSJ Motion, Mr. Drexler argued that his secured claim was not subject to genuine dispute. As part of its due diligence, Empery – a sophisticated lender – received documentation and information regarding his secured loans to Debtor and decided to proceed with the loans,

10

which Mr. Drexler argued demonstrated that what Empery received was satisfactory. Further, argued Mr. Drexler, his proof of claim included copies of the relevant notes, security agreements, amendments, and proof of perfection, which was prima facie evidence of the validity and amount of his secured claim, which, until now, no one had challenged. Moreover, he noted, Debtor's chief financial officer completed Debtor's bankruptcy schedules and listed Mr. Drexler's secured claim for $10,872,081 and did not identify it as contingent, unliquidated, or disputed.

Mr. Drexler also argued that there was no genuine dispute that Empery materially breached ICA Section 10 with its pursuit and support of the PSA, 9019 Motion, and Debtor' Plan, and that he was damaged as a result. He argued that, just because Empery was not successful in getting the court to approve the PSA and 9019 Motion and confirm Debtor's Plan, did not mean Empery did not breach the ICA. Under New York law, he argued, a breach of contract action accrues at the time of breach, and Empery's breach occurred when it participated in negotiating and supporting the PSA, 9019 Motion, and Debtor's Plan. In addition to legal fees, Mr. Drexler argued that he was damaged by Empery's attempt to preserve a portion of its secured claim by cutting a deal with White Winston and the Committee, at the expense of his secured claim.

### b. Ruling on PSJ Motion and Cross PSJ Motion

Four days after the parties filed their simultaneous oppositions to each other's voluminous motions, the bankruptcy court, without a hearing, entered

a half-page order denying Mr. Drexler's PSJ Motion and granting Empery's Cross PSJ Motion. The court dismissed Mr. Drexler's counterclaims for breach of contract and declaratory judgment, and Empery and Mr. Drexler dismissed all remaining claims in the Empery/Drexler ICA adversary. Mr. Drexler timely appealed the summary judgment order.

## C.    Post-appeal events

After Mr. Drexler and Empery proposed competing chapter 11 plans, the bankruptcy court confirmed Empery's fourth amended plan on February 19, 2025 ("Empery Plan"). The competing plans were pending while Empery and Mr. Drexler were litigating the cross partial summary judgment motions. Class 2 in the Empery Plan provided for the competing secured claims of Empery, Mr. Drexler, White Winston, and Prestige Capital Finance, LLC (a claim which Empery purchased under the name "MP Collateral"). The bankruptcy court, through an adversary proceeding – the lien priority adversary – was going to determine the validity, amount, and priority of the competing secured claims prior to confirmation. It seems the real and only dispute was whether Empery or Mr. Drexler was in first position. The White Winston adversary proceeding would also be dismissed with prejudice.

Based on the pre-confirmation summary judgment ruling and the parties' dismissal of all remaining claims in the Empery/Drexler ICA adversary, Empery's claim was deemed to be most senior and would receive the $10.6 million left in net sale proceeds. Consequently, the lien priority adversary was dismissed.

Mr. Drexler timely appealed the Empery Plan confirmation order to the BAP, but it was dismissed on June 27, 2025. *See* BAP No. NV-25-1044, dkt. 10.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.[6]

## ISSUES

1. Is the appeal moot?

2. Did the bankruptcy court err in denying Mr. Drexler partial summary judgment and granting partial summary judgment to Empery?

3. Did the bankruptcy court abuse its discretion regarding continuance requests?

## STANDARDS OF REVIEW

We determine our own jurisdiction, including questions of mootness, de novo. *Ellis v. Yu (In re Ellis)*, 523 B.R. 673, 677 (9th Cir. BAP 2014) (citing *Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs)*, 339 F.3d 782, 787 (9th Cir. 2003)).

We review de novo the bankruptcy court's summary judgment ruling. *Salven v. Galli (In re Pass)*, 553 B.R. 749, 756 (9th Cir. BAP 2016). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether

---

[6] The dismissal of the remaining claims in the Empery/Drexler ICA adversary rendered the partial summary judgment order final. *Rodriguez v. Taco Bell Corp.*, 896 F.3d 952, 955-56 (9th Cir. 2018) (holding that dismissal of plaintiff's remaining claim rendered the order granting partial summary judgment to defendant an appealable final judgment).

the trial court correctly applied relevant substantive law. *Captain Blythers, Inc. v. Thompson (In re Captain Blythers, Inc.)*, 311 B.R. 530, 534 (9th Cir. BAP 2004), *aff'd*, 182 F. App'x 708 (9th Cir. 2006).

A decision to deny a continuance is reviewed for an abuse of discretion. *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

**A.    The appeal is partially moot.**

We cannot exercise jurisdiction over a moot appeal. *United States v. Pattullo (In re Pattullo)*, 271 F.3d 898, 900 (9th Cir. 2001); *In re Ellis*, 523 B.R. at 677. A case is moot where the issues presented are no longer live and no case or controversy exists. *Pilate v. Burrell (In re Burrell)*, 415 F.3d 994, 998 (9th Cir. 2005). The test for mootness is whether an appellate court can still grant effective relief to the prevailing party if it decides the merits in his or her favor. *Id.*

In his counterclaims for breach of contract and declaratory judgment, Mr. Drexler asked the bankruptcy court to rule that, as a result of Empery's material breach, the ICA was unenforceable or that he was entitled to rescission of the ICA. Under the ICA, the parties agreed that Empery's debt was senior to Mr. Drexler's. Mr. Drexler's hope was that if the ICA was deemed unenforceable, or even rescinded, his debt would become senior to

14

Empery's. Since the appeal was filed, Empery's Plan has been confirmed.

In the Empery Plan confirmation order, the bankruptcy court determined that Empery was senior above all other secured creditors, including Mr. Drexler, and would receive all net sale proceeds of $10.6 million. Although Mr. Drexler appealed the confirmation order, his appeal was dismissed for lack of prosecution. The order is therefore final, and we, and he, are bound by it. *See* § 1141(a) (the provisions of a confirmed plan bind any creditor whether or not the claim of such creditor is impaired under the plan and whether or not such creditor has accepted the plan); *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (holding that creditors are bound by final plan confirmation orders even if a mistake has been made, unless that mistake is jurisdictional); *Heritage Hotel Ltd. P'ship I v. Valley Bank of Nev. (In re Heritage Hotel P'ship I)*, 160 B.R. 374, 377 (9th Cir. BAP 1993) (noting that a plan confirmation order "is a binding, final order, accorded full res judicata effect"), *aff'd*, 59 F.3d 175 (9th Cir. 1995).

Consequently, we are unable to provide Mr. Drexler with the relief he seeks in his third counterclaim for declaratory judgment, which is a determination that Empery's breach was so material that the ICA was unenforceable or could be rescinded. Even if we could and did make that determination, Empery's claim is senior to Mr. Drexler's under the Empery Plan confirmation order, and we cannot change that. Mr. Drexler will never be ahead of Empery no matter what we do here. Thus, we lack the ability to grant Mr. Drexler any effective relief as to his third counterclaim for

15

declaratory judgment, so his appeal of summary judgment on that counterclaim is DISMISSED as MOOT. To the extent he seeks this same relief in his first counterclaim for breach of contract, his appeal of summary judgment on the first counterclaim is also DISMISSED as MOOT.

**B.  The bankruptcy court erred in granting Empery summary judgment on Drexler's counterclaim for breach of contract.**

### 1.  Summary judgment standards

Summary judgment "is appropriate when the pleadings and supplemental materials show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Rodriguez v. Hotchkiss (In re Rodriguez)*, 649 B.R. 773, 780 (9th Cir. BAP 2023) (citing Civil Rule 56(a); Rule 7056); *Roussos v. Michaelides (In re Roussos)*, 251 B.R. 86, 91 (9th Cir. BAP 2000), *aff'd*, 33 F. App'x 365 (9th Cir. 2002)). The initial burden of showing the absence of disputed material facts lies with the moving party after which the burden then shifts to the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The court may not weigh the evidence presented by the parties, but rather determine only whether a material factual dispute remains for trial. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997). "A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party, and a fact is 'material' if it might affect the outcome of the case." *Wank v. Gordon (In re Wank)*, 505 B.R. 878, 886 (9th Cir. BAP 2014).

16

## 2. Analysis

The bankruptcy court's order is confusing and vague. It states that Empery was seeking summary judgment on Mr. Drexler's counterclaims for breach of contract and declaratory judgment. It further states that Mr. Drexler was seeking summary judgment on Empery's same affirmative claims. That is incorrect. Mr. Drexler was seeking partial summary judgment on his own counterclaims for breach of contract and declaratory judgment. Empery's affirmative claims were never the subject of the cross motions for partial summary judgment.

Further, the bankruptcy court simply ruled that Mr. Drexler's motion was "denied" and that Empery's motion was "granted" based on the "arguments contained in Empery's pleadings." Part of our review of summary judgment rulings is determining whether the bankruptcy court correctly applied relevant substantive law. *In re Captain Blythers, Inc.*, 311 B.R. at 534. We are unable to tell what law the court applied, other than what Empery argued in its pleadings, but we have no idea which argument the court found compelling or why it decided that there was no genuine dispute of material facts entitling Empery to summary judgment.

Mr. Drexler, who is now pro se, argues that the bankruptcy court erred by granting Empery summary judgment because factual disputes existed regarding breach of contract, Empery's misconduct, and claim priority. Mr. Drexler does not identify exactly which material facts he believes were in dispute, but he does argue that Empery breached ICA Section 10 by actively

17

supporting the PSA, 9019 Motion, and Debtor's Plan, which elevated junior creditors such as White Winston to positions ahead of him. He further argues that Empery breached ICA Section 10 by challenging the existence – i.e., validity – of his secured claim.

Viewing the evidence in the light most favorable to the nonmoving party as we must, we conclude that there was a genuine dispute over the material facts of Empery's breach of the ICA and Mr. Drexler's damages, and that a reasonable fact finder could have found that Empery breached ICA Section 10 and that Mr. Drexler was damaged.

Under ICA Section 10, Empery could not take any action to contest, challenge, or assist anyone else in contesting or challenging, directly or indirectly, the validity, priority, enforceability, or perfection of Mr. Drexler's secured claim. Mr. Drexler argued that by negotiating and supporting the PSA, 9019 Motion, and Debtor's Plan, which altered the rights and priority of his secured claim by providing for a distribution to unsecured creditors before his secured claim, Empery breached ICA Section 10. Empery argued that by supporting these documents it was not seeking to contest or challenge Mr. Drexler's secured claim or its priority, but rather it was protecting and advocating for its right to payment on its secured claim.

While in its May 2024 Findings the bankruptcy court found that the PSA, 9019 Motion, and Debtor's Plan improperly attempted to alter the priority of Mr. Drexler's secured claim, it did not address the crucial issue of Empery's role in negotiation and presentation of those documents to the

18

bankruptcy court and whether that would be a breach of ICA Section 10. That was not an issue at the time.

Empery argues that no harm came to Mr. Drexler in the end because the bankruptcy court did not approve the PSA and 9019 Motion or confirm Debtor's Plan, plus he was out of the money anyway absent these documents. In other words, no harm no foul. But one of the reasons the whole scheme failed is because Mr. Drexler successfully challenged it. Further, it is not clear that Mr. Drexler was out of the money at that time. The PSA, 9019 Motion, and Debtor's Plan were filed months before the asset sale. So, Mr. Drexler being out of the money may not have been a foregone conclusion. While Empery wishes to view things in hindsight, under New York law "a breach of contract cause of action accrues at the time of the breach." *Ely-Cruikshank Co. v Bank of Montreal*, 81 N.Y.2d 399, 402 (1993). Mr. Drexler incurred significant attorney's fees to oppose what the bankruptcy court found was "an impermissible class-skipping scheme that violate[d] fundamental Bankruptcy Code priorities." The Securities Purchasing Agreement, which incorporates the ICA, contains an attorney fee provision.

In addition, although Empery maintains that it did not challenge the validity of Mr. Drexler's secured claim, it did exactly that in its Cross PSJ Motion. Empery argued that to even allege it breached the ICA, Mr. Drexler had to show that he held a secured claim, and Empery argued that he failed to present sufficient evidence to support one. Put simply, Mr. Drexler did not provide evidence to support the material fact that he actually had a valid

19

claim in this case. However, the ICA discusses Mr. Drexler's loans to Debtor as a given, and it is reasonable to infer that Empery did its due diligence before providing the loans to Debtor and determined that Mr. Drexler's loans to Debtor actually existed and were secured. That is why it insisted on the ICA. At minimum, there was a genuine dispute over the question of whether Mr. Drexler could support his secured claim. Besides this, ICA Section 10 prohibits Empery from challenging the validity of Mr. Drexler's secured claim. The most material component of the ICA as to Mr. Drexler was Empery's agreement not to contest or challenge the validity of his secured, but subordinated, claim.

From our review of the record, we conclude that genuine issues of material fact exist on Mr. Drexler's counterclaim for breach of contract, and that summary judgment was erroneously granted to Empery on these issues. Accordingly, we must set aside the entry of summary judgment with respect to that counterclaim and remand for further proceedings.

**C.    The bankruptcy court did not abuse its discretion regarding continuance requests, and Drexler's remaining arguments lack merit.**

Mr. Drexler argues that the bankruptcy court abused its discretion by denying him trial preparation time due to the California wildfires, which he says affected his ability to coordinate with his attorney and finalize his defense. Mr. Drexler argues that he was denied the right to present or cross-examine witnesses or submit documentary evidence. This, he argues, deprived him of due process. Mr. Drexler does not identify what evidence or

testimony he was prevented from presenting due to the alleged lack of trial preparation time.

What Mr. Drexler appears to argue is that the summary judgment process, which turned out bad for him, deprived him of the right to a trial. However, Mr. Drexler fails to appreciate that both parties filed motions for partial summary judgment contending that they were entitled to judgment as a matter of law, which could obviate the need for trial. Presumably, had Mr. Drexler prevailed on his motion, he would not be making this argument.

In any case, as Empery points out, when the Palisades fire broke out on January 7, 2025, the court accommodated Mr. Drexler's request for more time by rescheduling depositions. The court convened an emergency telephonic status conference on January 14, 2025, expressly to address fire-related scheduling issues. It ultimately postponed the scheduled adversary trial dates from January 24 and February 3, 2025, and again to mid-February 2025. Thus, given this accommodation, Mr. Drexler's arguments appear baseless. Further, since we are remanding for trial, his argument is essentially moot.

Mr. Drexler also argues that Empery placed improper pressure on his legal counsel, including discouraging attorneys from representing him through misleading conflict claims. Without more facts, it is unclear what Mr. Drexler is referring to here. He appears to have had counsel throughout the entire case before the bankruptcy court. More importantly, he fails to explain how this is relevant to the order on appeal.

Lastly, Mr. Drexler argues that because the dollar amount at stake was so high, deciding these issues on summary judgment was improper. We again remind Mr. Drexler that he voluntarily took part in the summary judgment process and was willing to accept the court's ruling on the ICA and the parties' relative priorities, regardless of the dollar amount. Thus, he cannot now complain about the process in which he was a willing participant and competently represented by counsel.

## CONCLUSION

We DISMISS as MOOT Mr. Drexler's counterclaims for declaratory judgment and breach of contract to the extent they seek a determination that the ICA is unenforceable and that his claim is senior to Empery's claim. We AFFIRM the bankruptcy court's ruling denying Mr. Drexler's motion for partial summary judgment. We REVERSE the bankruptcy court's ruling granting Empery's motion for partial summary judgment on Mr. Drexler's counterclaim for breach of contract to the extent he sought monetary damages and REMAND for further proceedings.